Simon, J.
delivered the opinion of the court.
Plaintiff alleges that he is the owner of a lot of ground on which there is a two story brick dwelling house; that his said lot is bounded on one side by the property of the defendant, and that the side wall of his said house was built as authorized by law, one half on his own ground and the other half on defendant’s, so as to be a wall in common between him and said defendant. He complains that the defendent having demolished his buildiDg which rested against said wall, cut away that part of the foundation thereof which was laid on his land, so that the wall, originally well and substantially built, immediately sunk and gave way, and occasioned the cracking of his other walls. That the defendant, after cutting away one half of the said foundation, proceeded to construct against said wall, granite buildings of uncommon size and weight, which the wall was evidently insufficient to support, in consequence of which he has been injured to the amount of $8000 damages; he prays judgment for said sum. The defendant pleaded the general issue, and judgment having been rendered against him for $1639 damages, said defendant appealed.
The evidence shows that at the time defendant was about commencing to build, he called upon two architects (Messrs. G-urlie and Pilié) to examine the partition wall, and to give their opinions on its solidity; they found it strong enough, except that the base of the foundation was not sufficiently wide; defendant was anxious to do nothing that would injure his neighbor’s house; their advice was to cut away a part of the foundation of the party wall on defendant’s side, so that the new wall might settle down upon it without touching the projections of the other wall. This projection (l’empattement) being about six inches on defendant’s ground, was accordingly removed in the manner proposed by the architects, by cutting it down perpendicular with the wall and a new foundation was built close adjoining the old wall, and a new [393] wall raised upon the new foundation. Other witnesses were examined, who stated that in their opinion, all damage to plaintiff’s house might have been avoided by taking down the partition wall and rebuilding it entirely new and of sufficient strength to bear the building of defendant; that the erection of defendant’s building, has caused the plaintiff’s house to sink considerably, this being the natural consequence of cutting away any part of the foundation of the party wall, and of building another wall against it. One of the witnesses (William Brand) says that he saw the persons employed in digging the foundation of defendant’s house; that they were digging away part of the foundation of the wall of plaintiff’s house, and were about laying a foundation for the wall of defendant’s house partly under that of plaintiff; that he observed to them that they would injure the plaintiff’s house or cause it to fall; that in building up the wall of defendant’s house, said *240 wall after the height of about 28 feet projects about six inches in the other wall and rests upon it, and he considers the digging' away the foundation of plaintiff’s house as being the sole cause of the damage done to it. This evidence is corroborated by the testimony of D. IT. Twogood, who swears that after having examined the wall in question, he found that defendant’s wall projects in that of plaintiff’s, where it is a brick and a half thick from four to six inches. Several witnesses have also heen heard to fix the amount of damages, and they generally estimate the expenses of the necessary repairs from $1200 to $1500, besides the loss of rent, &c.
We are satisfied from the evidence that the damage complained of has been occasioned by the erection of the defendant’s new wall close adjoining the old one, after cutting away the projecting part (l’empattement) of the foundation of the plaintiff’s house ou the defendant’s side; and that the projecting of the defendant’s wall in that of plaintiff’s at a certain height, must have also greatly contributed to its destruction and to the cracking and sinking [394] of the other walls. The defendant would therefore ho responsible' for the damages caused by his new work, unless he can show that he has done nothing hut exercise a faculty allowed him by the laws of his country, or has satisfactorily proven that the plaintiff has consented to the manner in which the wall has been erected.
It is perfectly clear that according to the arts. 677 and 678 of the La. Code, every co-proprietor is at liberty to increase the height of the wall held in common, provided it be done at his own expense; and if the common wall cannot support the additional weight of raising it, he is bound to rebuild it anew entirely, at his own. expense, and the additional thickness must be taken from his property. The legal faculty in such a case appears therefore to he limited to increasing the height of the wall held in common, and when this cannot be done, owing to its insufficiency, to its being rebuilt anew entirely by the neighbor who wishes it to be made higher; he is bound by law to do so, and although such a privilege may be used without the consent of the other co-proprietor, it is nevertheless one which cannot be exercised with too much care and attention. Toullier, vol. 3, No. 204; Duranton, vol. ,5, No. 330; 13 La. Eep. 273. But when one of the neighbors does not choose to exercise the faculty which the law allows him, and prefers erecting another wall close adjoining his neighbor’s, is he at liberty to do so by undermining his said neighbor’s foundation, cutting away the projecting part of it (l’empattement) or doing any other work which may prove injurious in its consequences, without obtaining his neighbor’s consent? Oan he say that he is using a legal faculty ? It is a principle of law, “ although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it which may deprive Ms neighbor of the liberty of enjoying his own, or which hay be the cause of any damage to him.” La. Code, art. 663; and the art. 681 informs ns that “ neither of the two neighbors can make any cavity within the body of the wall held by them in common, nor [395] can he affix to it any woke: without the consent of the other, or without having, on his refusal, caused the necessary precaution to be used, so that the new work he not an injury to the rights of the other, to he *241 demonstrate sufficiently that the defendant had no right to cut away a part of the foundation of the plaintiff’s house, nor to cause the projection of his wall to rest on the plaintiff’s without exercising such precaution as to avoid injuring said plaintiff’s property; Toullier, vol. 3, No. 206; and even then, if one of the neighbors takes upon himself not to use the faculties allowed him, and to attain his object by some other means but those pointed out by law, he becomes necessarily responsible, notwithstanding his precautions, for the consequences of his acts, if the new work by him erected becomes an injury to the rights of his neighbor. Toullier, vol. 3, No. 207, says; “ S’il s’agit d’ouvrages auxquels il ne doit pas contribucr, ni pour lesquels on no soit pas obligé d’entrer chez lui, celui qui vent les faire pent se borner, aux termes de l’art. 622 (the same as the article 681 of the Louisiana Code) á requerir le consentement par une simple notification par un huissier; et en cas de refus de consentir, faire régler par experts les moyens nécessaires, pour que le nouvel ouvrage ne soit pas nuisible aux droits de l’autre voisin; sauf sa eespostsabilite peesonelle ; et les dommages et inteEETS AUXQUELS ' IL POÜEEAIT ETEE OOHDAMNE, SI LES EXPERTS s’ETAIENT trompes, et que l’ouvrage fut nuisible aux droits de l’autre voisin. See also Duranton, vol. 5, No. 337. It is obvious therefore that the appointment of experts is a mere precaution, and cannot have the effect of discharging the neighbor from the obligation of repairing the injury caused by the new work; and we have no hesitation in concluding that the defendant cannot properly be said to have exercised such a legal faculty as not to be subjected to the responsibility resulting from the consequences of his acts, and that although it has been shown that he was anxious to do nothing that would injure plaintiff’s house, the circumstances of the case are such that he is undoubt- [396] edly bound to repair the damage caused by the erection of his new work.
But it has been strenuously contended that the plaintiff ought to have made opposition to the defendant’s work in due time; that said work was undertaken and carried on in the presence and within the knowledge of the said plaintiff who did not even manifest any dissatisfaction; that from his not having taken any measure to arrest the progress of the work, and suffering the wall to be built and completed, his silence must be interpreted as a tacit and implied consent on his part, and we have been accordingly referred to the arts. 1805, 852, 853, 854 et seq., of the La. Code. We are not ready to accede to this proposition. The terms of the article 681, seem to require more than a tacit or implied acquiescence resulting from the silence of the party; it contemplates, in our opinion, a direct and express consent, such as to be susceptible of being refused when called for, and Toullier, vol. 3, No. 206, goes so far as to say: “ La prudence exige de requérir un consentement écrit: la preuve testimoníale que le voisin aurait consentí ne serait pas reque; car il s’agit d’un droit foncier dont la valeur est indéfinie.” This certainly shows the fallacy of the argument that, the plaintiff consented because he did not make opposition; for, if parol evidence of a positive consent cannot be admitted, less so can it be inferred from the silence of the party. In a case like the present, how could the plaintiff’s inaction be so construed as, to *242 imply a tacit consent ? he is neither a mason nor an architect, and he could not therefore judge of the solidity or of the consequences of the construction ; he was aware that his neighbor had no intention of injuring his rights, and was consequently fully confident that the defendant would take all the necessary precautions to avoid, as much as possible, an injury to his property; it has not been shown that defendant ever communicated his plan of construction to the plaintiff; and even had he done so, said plaintiff would have [397] been unable to give his assent aven connoissance He cause, without the assistance of persons skilled in building. There may he cases in which a contract may he tacitly and impliedly assented to, according to the arts. 1805 and 1811 of the La. Code; but this, in our opinion, is not one of those in which, from the circumstances, the party can be supposed l)y Ms silence or inaction, to have given an implied assent to a proposition, which, it may he remarked, never was made hy the defendant to the plaintiff in any other manner hut by certain illegal acts, which the other, knowing the extent of his legal rights, and the responsibility assumed by his neighbor, did not think necessary to forbid.
With this view of the case, we think the judge a quo did not err in giving judgment against the defendant for the amount of damages proven to have been sustained by the plaintiff.
It is therefore ordered, adjudged and decreed, that the judgment of the district court he affirmed, with costs.