No. 11,605.

L. BONQUOIS VS. A. MONTELEONE.

Where a building has been condemned by an inspector under a city ordinance, and no notice of the fact has been given to the owner, and the City Council has taken no action, and the building is repaired by the owner, the fact of the inspector's condemnation will not prevent the owner from recovering damages for injury by the erection of a wall close to and adjoining his and at one part attached to it. An adjacent proprietor has no right in building a new wall to cut away, disturb or weaken a part of the foundation of his neighbor's wall, or to cause the projections of his wall to rest on that of his neighbor, and if it cause injury or damage, he is responsible.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

---

*John Bassich, Jr.,* for Plaintiff, Appellee:

Every wall which is a separation between adjoining buildings of the same height, which buildings are supported by the entire wall, in which the beams, joists, etc., are placed on each side, is, in absence of proof, presumed to be a common partition or boundary wall, and belongs jointly in indivision to the adjoining owners of the buildings without reference to the dividing line of the lots. C. C., Art. 677; Weil vs. Baker, 39 An. 1102, 1103; 44 An. 499, Oldstein vs. Building Association; 6 An. 566, Dorville vs. Amat; 9 An. 50, Duncan vs. Labouisse.

But when the adjoining buildings are not of the same height, one being lower, a two-story building, supported by two-thirds of said wall; the other, a three-story building, built entirely against said wall to support the building, the said wall will be presumed to be a common or partition wall only as high as the upper or highest part of the two-story building; that portion of

said wall enclosing and supporting the third story of the three-story building, is presumed to belong to the owner of the highest building, and can not be used or built upon by the owner of the adjoining two-story building in erecting a higher and heavier building without the express consent of the owner of the three-story building, or without paying one-half the value of same, so as to make it a wall entirely in common. If he fails so to do and uses the wall, he commits a tort. Toullier, Ed. 1833, Vol. 2, p. 52, Sec. 186; Com. on Art. 677, Civil Code; Pardessus on Servi-tudes, Vol. 1, p. 376, Sec. 160; C. C. 676-684; 27 An. 199, Chism vs. Boyd; Oldstein vs. Building Association, 44 An. 502.

Where defendant, an adjoining owner, formerly owned a two-story building, supported by an old wall, whether a wall owned en-tirely in common or partly in common, which old wall was sufficient to sustain the weight it was built to bear—a three and two-story building—defendant can not demolish the two-story building and erect in its place a heavy, massive five-story building, annex the side wall of same on the side of said adjoin-ing old wall, place an offset on top of said old wall, or interfere with said wall or its foundation, without obtaining the express consent (written consent, the authorities say) of the co-owner of the common wall (the plaintiff), or on his refusal, to resort to law to cause the necessary inspections to be made and pre-cautions to be used, to avoid injury to the adjoining building belonging to plaintiff, and not having done so, defendant uses the old wall so as to overload it, causes it to sink, thus damag-ing plaintiff's building, he, defendant, commits a trespass and will be liable for all the damages to plaintiff's adjoining property supported by said old wall. Rev. C. C., Arts. 579-679-685; Par-dessus, Vol. 1, p. 406, Sec. 178; Peirce vs. Musson, 17 La. Rep. 396 (and authorities therein); 9 An. 49, Duncan vs. Labouisse; Heine vs. Merrick, 41 An. 202; interpreting Art. 685, C. C. (and authorities therein cited).

A co-proprietor is at liberty to increase the height of the partition wall or wall held in common, at his own expense, provided it is suf-ficient or strong enough to support the additional weight; if it is not, he is bound to rebuild it anew, at his expense, taking the additional thickness from his own property; this right imposes upon him the corresponding duty of having the wall examined

by experts appointed by the court to examine whether it could
stand the additional weight; where the co-proprietor fails so to
do, he is clearly liable for damage to the wall in common, and
the building of the adjacent owner, supported by it, having an
equal or greater interest in said common wall.  13 La. 271, and
Pierce vs. Musson, 17 La. 390; Rev. C. C., Art. 681-682;
Sirey, Commentary on Art. 659, C. N., similar to Art. 681, Do-
mat's Civ. Law, Edit. 1850, p. 447, Sec. 1064.

But an adjacent owner (defendant) whose old building was sup-
ported on one side by an old party or common wall, had no
right to weaken said old party wall without plaintiff's express
consent, undermine it, and cut or remove a course of brick from
its foundation, to build a heavy five-story wall close up against
it, and to erect an offset or heavy water table on top of it, and
thus damage the party wall and plaintiff's adjoining building
supported by said wall; in so doing, defendant is responsible for
all damages to plaintiff's building, and can not shield himself
against the consequences of the error committed by his architect
or builder.    Same decision; Peirce vs. Musson, 17 La. Rep. 390.

It was a great mistake for defendant to have had the side wall of his
heavy five-story building built on the boundary line between his
said building and that of plaintiff without taking out the founda-
tion of the old common party wall, piling the new foundation
and extending the offset of the foundation of the new wall on
each side partly on plaintiff's property, which defendant had
the right to do, so that the centre of gravity of the two walls
would fall on the centre of a common foundation properly con-
structed to sustain both walls; that a heavy high wall built upon
the boundary line without the offsets extending over the
boundary line into the adjacent lot is defective and can not stand,
is clearly recognized by our jurisprudence.    3 An. 166; Murrell
vs. Fowler, and Heine case, 41 An. 205.

Where defendant, an adjoining owner of a two-story building sup-
ported by a wall in common, demolishes his building and erects
a heavier five-story building, builds his side wall on the old wall
in common instead of following the law requiring him to take
out the old wall and foundation and build a stronger wall and
foundation, and the old wall proves insufficient, sinks and
damages the adjoining building of plaintiff resting against said

wall, rendering same untenantable, defendant is a wrong-doer, and is responsible for all profits and rents lost by the adjoining proprietor, plaintiff.   30 An. 34, Gettworth vs. Hedden; Heine vs. Merrick, 41 An. 208; Peirce vs. Musson, 16 La. O. S. 394, 396.

In a suit for damages occasioned by a wrongful act, prescription runs, not from the time the act was done, but from the time when the damage was sustained in consequence of it.   36 An. 450, Hotard vs. Railway Co., and 37 An. 728, Heath vs. Texas Pacific Railway.

Where the chimneys of an adjoining proprietor, built in a wall in common, become useless and fail to draw any longer, caused by the co-owner of said wall erecting a high building adjoining, it is the duty of said co-owner, in erecting the higher building, to ccarry up said chimneys on his high building at his expense, and where through error the party whose chimneys are carried up pays the cost of raising same he is entitled to recover the amount back.   Toullier Droit Civil, Vol. 2, Paris Ed. 1833, Sec. 208; Perrin and Rendu, No. 2997; C. P., Art. 18; C. C. 2301; 10 An. 74 and 75, Catholic Society vs. New Orleans.

The action to recover what was paid without being due is one arising out of a *quasi*-contract and is prescribed in ten years. C. C. 2294; 15 An. 143, Garland vs. Scott; 36 An. 408; 35 An. 858, Succession of Richmond.

---

*Albert Voorhies* for Defendant, Appellant.

---

Argued and submitted February 12, 1895.
Opinion handed down February 25, 1895.
Rehearing refused May 6, 1895.

---

The opinion of the court was delivered by

McENERY, J.   The plaintiff sued the defendant to recover the sum of two thousand seven hundred and sixty-eight dollars and eighty cents damages for injury to the front and side walls of his building No. 85 Customhouse street, which amount also includes loss of rents, all caused by defendant's putting up a five-story building adjoining the building of plaintiff.

52

In the first petition filed, four hundred and eleven dollars was demanded; twenty-five dollars damage to interior wall, and to roof; thirty-six dollars for loss of rent, and the balance for injury to exterior front wall.

To this demand, a general denial was pleaded.

Construing the cause of action as continuous by the injury done plaintiff's building by the unsettled condition of the building of defendant, which it was alleged was continually sinking, several supplemental petitions were filed, the first claiming an additional damage of nine hundred and five dollars, making six hundred and thirty-three dollars damage to the side wall, and two hundred and twenty-two dollars for additional rent by loss of tenants, and one hundred and eighty-six dollars for loss of rent to be sustained on account of loss of tenants during the time required to repair plaintiff's building. The second demand claims the additional sum of two hundred and eighty-five dollars for more rent for vacant third story, from April, 1893, to March, 1894. This last demand is based on the allegation that the building of defendant continues to settle, preventing plaintiff from making anything but temporary repairs, as plaintiff had been informed by the architect that no permanent repairs could be made until defendant's building had permanently settled, and that the plaintiff, in consequence of these facts, could not guarantee his tenants that they would not be disturbed during the repairing of the building. An additional sum of one hundred and five dollars and eighty cents is claimed from the defendant on account of the plaintiff having paid him this amount in error for carrying up two chimneys of his building above defendant's five-story wall.

These demands were put at issue, defendant alleging that the wall claimed as a party wall had been condemned by the city of New Orleans, and that it was plaintiff's fault to have permitted it to remain standing, and to use the same in violation of the city ordinance. An exception of no cause of action was filed to the supplemental petitions, and the prescription of one year was pleaded to plaintiff's several demands.

On the 25th April, 1894, plaintiff filed a third supplemental petition, alleging the sinking of the walls of his building since January 31, 1894, caused by the additional sinking of plaintiff's building. This demand is for one thousand one hundred and sixty dollars and sixty-seven cents, and is based on the allegation that the continuous

sinking of plaintiff's building since the filing of the last petition necessitates radical repairs and reconstructions of plaintiff's building to place it in a condition in which it existed prior to the year 1892, before it was damaged by plaintiff's building. To this petition the same defences are filed as to the other demands.

Below there was judgment for the plaintiff for the sum of one thousand and fifty-eight dollars, with interest. From this judgment the defendant appealed.

In the record there is evidence that after a fire, which resulted in the defendant being compelled to erect the building which it is claimed injured plaintiff's building, under the ordinances of the City Council, plaintiff's entire building was condemned by the report of an inspector. But there was no notice given to the plaintiff of this condemnation, and the City Council took no action on the inspector's report. This, then, was a matter between the city authorities and the plaintiff. Not having been forbidden to repair his building, he took steps to have it repaired, and the testimony of the painter, carpenter, tinners and plasterer who did the repairs is conclusive that the building of plaintiff was in good condition prior to the erection of defendant's five-story building. This testimony is also corroborated by that of the tenants of the building, who vacated the same because of damage to it after the erection of the five-story building.

There is a considerable amount of expert testimony which, for the plaintiff, is conclusive as to the soundness, solidity and perfection of his building; and that for the defendant is equally as positive that his building has not settled, and that it has caused no damage to defendant's building, which has been partially wrecked by its inherent defects caused by old age and faulty construction in the foundation.

Disregarding this testimony of the experts and looking at the facts, we find from the evidence of mechanics who repaired plaintiff's building that it was in good repair when defendant erected his building; by the testimony of tenants that it was in good condition when they occupied it until compelled to vacate it after the erection of defendant's building for the reason that it was so damaged as to be no longer, in the parts occupied, habitable. We find in the testimony of defendant's witnesses that the offset or projecting bricks from the old foundation were removed and replaced by better work; that defendant's wall was built on his own land, but on this offset,

close to or against plaintiff's wall, and then fastened to it by a course of brickwork, called a water table or shed, which was worked into defendant's wall and then fastened to the wall of plaintiff, projecting over it about one inch.

There is no evidence that plaintiff's wall sunk before the building of defendant's wall. There is evidence of the fact that plaintiff's building was injured after the building of defendant was erected, and it was evidently caused by some disturbance in defendant's building, or by the sinking of plaintiff's wall in consequence of the disturbance of its foundation. Although not perceptible to the naked eye, and it escaped the scientific scrutiny of the experts, yet we think that defendant's building settled, and by both causes, *the weakening of the foundation by disturbing it, and the gradual settling of defendant's wall, fastened to that of plaintiff, the latter's building was injured.* A part of defendant's wall rested on the reconstructed set-off, and, although it went up only against or alongside of the wall of plaintiff, which joined by the " water table," the weight of the five-story building rested partly on this portion of the foundation, upon which plaintiff's wall in part rested; this we think was sufficient to cause some disturbance in plaintiff's building.

The wall was one held in common, and it is very manifest that the defendant, in building the five-story structure, did not abandon the wall and erect one exclusively on his own property, free from plaintiff's wall.

Having made use of a part of the original foundation, and having attached his wall to that of plaintiff, the defendant was compelled to have provided against any injury to plaintiff's building. He neglected to strengthen the wall in common to support the additional weight which he added to it by the water table attachment, and he failed to strengthen the foundation on which the common wall rested, on the side which supported plaintiff's building. The soil in the city of New Orleans is yielding, baffling at times the skill of the expert engineers to overcome the difficulties in the way of arresting the settling of large and heavy buildings. It is not unreasonable then to suppose that a large five-story building, partly built on an old foundation, would, to some extent, sink, and it is more plausible that an old foundation, partially taken up on one side, and reconstructed and not strengthened on the other, on which partly rests a heavy wall, would disturb and disarrange the old and existing

wall. The fact that the new building visibly shows no signs of sinking is an evidence of the skill of the architect and builder, but the damaged and partially wrecked condition of the old building is also an evidence that the new work, in its solidity, was done at the expense and the sacrifice of the old.

The old wall was not sufficiently strong to support the additional weight placed upon it by defendant, and the foundation was so cut away on one side and not strengthened on the other as to endanger plaintiff's wall.

In building, the defendant made use of the old wall to support his new wall, both in the foundation and in the attachment, although the latter was not intended for the purpose of supporting the new wall. But from the views we have expressed it is plain to us that the attachment by means of the water table brought the weight of the new wall to bear on the old. These facts bring this case within the doctrine announced in the case of Pierce vs. Musson, 17 La. 389, in which it was held that " an adjacent proprietor has no right to cut away part of the foundation of his neighbor's wall or house, or to cause the projections of his wall to rest on that of his neighbor in building a new wall, and if it causes injury or damage he is responsible."

In the instant case there was no effort made to strengthen the old wall as required by Art. 655, C. C., and by Arts. 681, 682.

The testimony does not show that the plaintiff has made an effort towards the permanent repair of his building. His demands for rent and for additional damages are repeated in supplemental petitions, with alarming frequency. Under these conditions the damages to be assessed against the defendant would be prolonged to an indefinte period and the old building would be a good investment, as it would be filled with tenants paying rents through defendant, and reconstruction and repairs would be never ceasing. We do not say that in such a case, if repairs were completed and new damage done, no cause of action would arise. The contrary is the law. But we do say that an old building injured by the erection of a new one can not be kept out of repair, and a demand constantly growing and enlarging against the party erecting the new structure. Under the pleadings we can not safely estimate the rents. For all demands in the several supplemental petitions to the time of filing the same, we think the estimate of the District Judge liberal.

After repairs have been made, plaintiff's rights to demand damages for new injuries will be reserved, and for rents during a reasonable time taken for repairs.

Judgment affirmed.