(92 South. 739)

Nos. 24902, 25181.

**ECUYER et al. v. BENEVOLENT ASS'N OF ELKS et al.**

(June 5, 1922. Rehearing Denied by Division B July 1, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Adjoining landowners** ⬤⟹4(7)—**Owner of building damaged by excavation only entitled to cost of restoring to former condition.**

Where a building damaged by the failure of one excavating on adjoining premises to properly support it could have been repaired so that it would have been as good as before the damage occurred, and the party responsible offered to make such repairs, the owner could only recover the cost of restoring it to its former condition, and not the cost of rebuilding.

2. **Adjoining landowners** ⬤⟹4(7)—**Cost of removing wall made necessary by failure to protect held recoverable.**

Where a building was damaged by an excavation on adjoining premises without sufficient support, the owner was entitled to recover the expenses incurred in removing one of the walls by direction of the city architect because of its dangerous condition.

3. **Adjoining landowners** ⬤⟹4(7) — **Owner of building damaged by excavation entitled to rents lost during time it could not be leased.**

Where a building damaged by an excavation on adjoining premises for a new building could not be satisfactorily repaired until the work on the new building had progressed sufficiently to permit of such repairs, the owner was entitled to recover the rents lost during the time the repairs could not be made, and during a reasonable time thereafter for making them.

4. **Adjoining landowners** ⬤⟹4(7) — **Rents not recoverable after reasonable time for making repairs necessitated by excavation.**

The owner of a building damaged by the making of an excavation on adjoining premises for a new building could not recover for loss of rents after the expiration of a period during which repairs could not be made because of work being done on the new building, and after the lapse of a reasonable time for making the repairs, interest only being recoverable thereafter.

5. **Adjoining landowners** ⬤⟹4(7)—**Expenses incident to rebuilding damaged building not recoverable where it could have been repaired.**

Where a building damaged by the making of an excavation on adjoining premises for a new building could have been repaired and restored to as good condition as before the damage, amounts expended for contractors' estimates and architects' services in rebuilding were not recoverable by the owner.

6. **Damages** ⬤⟹71—**Attorney's fees not allowable in action for damage to building from excavation.**

Attorney's fees were not recoverable in an action for damages to a building caused by the making of an excavation on adjoining premises.

7. **Master and servant** ⬤⟹320—**Employer failing to terminate building contract upon contractor's failure to protect adjoining building held liable.**

Where the specifications for a building contract required adjoining buildings to be properly supported, and the contract authorized its termination in case of the contractor's failure or refusal to follow the drawings and specifications, the owner, who observed the failure of the contractor to properly support an adjoining building, but failed to terminate the contract and protect the adjoining property, was liable for the resulting damage.

8. **Indemnity** ⬤⟹13(1)—**Employer of building contractor entitled to recover from contractor amount for which held liable to adjoining owner.**

One employing a building contractor, and held liable to an adjoining owner for the contractor's failure to protect the adjoining building in making an excavation, is entitled to recover against the contractor the amount recovered against it.

Appeal from Civil District Court, Parish of Orleans; Val J. Stentz, Judge.

Actions by Emile S. Ecuyer and others against the Benevolent Association of Elks and others. Cases consolidated. From a judgment for plaintiffs, defendants appeal. Judgment reduced and affirmed.

Denegre, Leovy & Chaffe, of New Orleans, for appellant John Thatcher & Son.

Eldon S. Lazarus, of New Orleans (Hebert S. Weil, of New Orleans, of counsel), for appellant Benevolent Ass'n of Elks.

William J. Guste, of New Orleans, for appellees. ,

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

OVERTON, J. This is a suit, sounding in damages, arising out of an injury to a building, which injury, it is alleged, required its demolition. The building was situated at Nos. 115 and 117 Elks Place, in the city of New Orleans. The damages claimed and itemized aggregate $7,807.10. Beyond this sum, judgment is asked for rents up to the time of the payment of the judgment to be rendered herein, and also for 20 per cent. attorney's fees.

The Benevolent Association of Elks, a corporation formed for the purpose of holding real estate for the local lodge of the Benevolent and Protective Order of Elks, desired to erect a home for the lodge, and accordingly entered into a contract with John Thatcher & Son, a corporation, to erect the building. The site selected abutted the property of plaintiffs. Plaintiffs' building, which was a small, two-story, brick building, was old, and the walls were somewhat cracked. It does not appear when it was built, but there is evidence to the effect, uncontradicted, that it was old 60 years ago. John Thatcher & Son, in making the excavations for the foundation of the building it was about to erect, failed to properly support plaintiffs' building, and, as a result, one of the walls thereof began to give way, and a part of it collapsed. As a further result of the failure to exercise necessary precautions, the old cracks in the walls were widened and lengthened, a few new cracks appeared, the building gave way at a division wall, and leaned toward the excavations, causing a crack at the division wall, ranging from four to seven inches in width.

On August 15, 1917, the city architect notified Mr. Ecuyer that unless the building was shored it would become a menace, and two days later notified him that he considered the building dangerous as it then stood, and therefore instructed him to demolish it at once. The following day, referring to a verbal inquiry made by Mr. Ecuyer, the purpose of which was to ascertain whether he would be required to demolish the building entirely, the city architect advised him that it would be impossible to say at that time how far the work would have to proceed, though so soon as he was satisfied that all danger had been removed it might cease. Plaintiffs removed a section of the wall, and shored the remaining part. The building was not taken down until the lapse of something over two years after that, the city architect apparently being satisfied with it in that condition.

Some eight months after the damage had been caused, a representative of Thatcher & Son called on plaintiffs' representative and offered to repair the building. He, however, received no decisive answer, but was informed that plaintiffs had not then determined what to do. The offer to repair was never accepted. Shortly after it was made this suit was filed.

Plaintiffs' contention is that the building was beyond repair, and therefore had to be demolished, and hence that they are entitled to judgment for the amount necessary to rebuild it. The contention of Thatcher & Son is that the building could have been restored to its former condition by repairing it, and that, under such circumstances, it is liable only for the amount necessary to thus restore it.

[1] It is obvious that, if the building could have been repaired, and thus restored to its former condition, plaintiffs are entitled to

nothing more than the cost of such restoration. In our view, from the evidence before us, though it is conflicting, it could have been repaired, and plaintiffs would have had as good a building as they had before. That portion of it that leaned towards the excavations might have been raised to its proper level, as appears from the evidence, by using a pump for that purpose; its foundation then could have been fully restored; the cracks in the building were not so many that the sections of the walls in which they appeared could not have been easily removed and rebuilt with new brick. The rear wall that had been demolished could easily have been rebuilt. While plaintiffs would not have had, upon the completion of the repairs, as good a building as they would have had by rebuilding, still it would have been equally as good as it was before the damage occurred, which is all they had a right to expect.

We are of the opinion that the evidence justifies the conclusion that the building might have been thus restored at a cost of $1,600. Thatcher & Son, in offering to repair it, stated that the repairs would cost that amount. As plaintiffs evidently had no immediate intention to rebuild, there was no reason why they should not have given that company an opportunity to restore the building before demanding of it the cost of rebuilding, since they could not have lost anything by doing so. We are therefore of the opinion that, as the building could have been restored to its former condition for $1,600, plaintiffs are entitled to judgment for that amount, but not for the cost of rebuilding.

[2] Plaintiffs also sue for $23.60, the expense incurred in demolishing the rear wall of the structure, when they received notice to demolish the building from the city architect. This expense was necessary, and they are entitled to judgment for that amount.

[3] They also sue for the loss of monthly rents amounting to $700. The building seems to have been habitable up to August 15, 1917. when the rear wall began to give way. After that it ceased to be habitable; and we infer that it could not have been satisfactorily repaired until the work on the Elks' building had sufficiently progressed to permit of the repairs, which we infer was about April 5, 1917, the time Thatcher & Son made the offer to repair. Allowing a reasonable time for making the repairs, this would make, all told, ten months during which the building could not be leased, due to the fault of Thatcher & Son. During a part of that period, it may be added, if not during all of it, Thatcher & Son used a portion of the building to store cement. The building rented for $70 a month. Plaintiffs, we think, are entitled to the $700 claimed.

[4] Plaintiffs have also asked that the right be reserved them to sue for rents accruing after the filing of this suit until the payment of the judgment to be rendered herein. It is clear, however, that, if such a suit were filed, no recovery could be had. Plaintiffs are entitled to rents during the period that the property could not have been repaired, because of the work that was being done in constructing the Elks' building, and during the period required to make the repairs. Even had the expense necessary to make them been paid then, still, as the repairs could not have been made, plaintiffs could not have leased their property, and hence during that time they are entitled to rents. After that period, and after the allowance of a sufficient period to make the repairs, the one causing the damage is not liable for the loss of rents, but only for interest on the debt due by him for the damage. Interest is the only damage allowed for the nonpayment of a debt. See, relative to such a demand, Bonquois v. Monteleone, 47 La. Ann. 814–821, 17 South. 305.

[5, 6] Plaintiffs also sue for amounts ex-

pended for contractors' estimates and architects' services amounting to $190, and also for 20 per cent. attorney's fees on the total amount of damage sued for in this proceeding. These estimates were obtained and the services were performed for rebuilding, and not for repairs. As we have found that the building could have been repaired, these expenses should not be allowed. In respect to attorney's fees, they are not allowable in such a proceeding as this, nor do plaintiffs seem to press their allowance in their brief.

[7] Plaintiffs have sued Thatcher & Son, and the Benevolent Association of Elks, in solido, for the damages claimed. The latter resists this demand on the ground that the corporation of Thatcher & Son was an independent contractor, and that whatever damage was occasioned was due to its fault alone, and not to the fault of the Benevolent Association of Elks.

The specifications are not in the record, but the evidence shows that under them the adjoining buildings were to have been properly supported, in a specified manner; that, due to the failure of Thatcher & Son to carry out the specifications in that respect, the damage was occasioned; and that, prior to the damage, the Benevolent Association of Elks, having observed the failure to follow the specifications in that regard, called the attention of Thatcher & Son to the failure, and protested against it, but went no further.

While the contract to erect the building shows that Thatcher & Son was to furnish the labor and material necessary, and to complete the work within a given time, for a specified sum, and to have control of its execution, subject to the plans and specifications, yet it also provides that the owner and the owner's architect should have the right to enter the building for purposes of examination and inspection, to ascertain whether the same complied as to materials and workmanship, with the requirements of the contract; and it also provides that—

"Should the contractor, at any time during the progress of said works, become bankrupt, refuse or neglect to supply a sufficient quantity of workmen, or cause any unreasonable neglect or suspension of work, or fail to furnish a sufficient number of workmen, *or fail or refuse to follow the drawings and specifications, or to comply with any of the agreements, covenants and stipulations herein contained,* the contract herein shall at once be terminated." (Italics ours.)

From this it appears that, while Thatcher & Son was virtually in every respect an independent contractor, yet in one respect that corporation was under the control of the Benevolent Association of Elks. That association retained the power to see that Thatcher & Son complied with the specifications during the construction of the work, and, upon its failure to comply, to immediately terminate the contract. That association, as was its duty, made the required provision in the specifications for the protection of adjoining property. Having retained the power to see that those specifications were complied with during the progress of the work, and having observed the failure of Thatcher & Son in that respect, it owed it to the plaintiffs to see that the specifications were immediately complied with, and, upon the failure of Thatcher & Son to comply, if need be, to terminate the contract, and protect the property. Having failed in that respect, the association is liable.

[8] The Benevolent Association of Elks, in its answer, avers that its codefendant, John Thatcher & Son, Inc., bound itself to hold it harmless from all claims for damages to adjoining property, and prays that, whatever judgment may be rendered against it, it have and recover like judgment against its said codefendant. The evidence substantiates this averment. It is therefore entitled to such judgment.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from, as against defendants in solido, and as against John Thatcher & Son and in

favor of the Benevolent Association of Elks, be reduced from $4,616.27 to $2,323.60, and in all other respects, including the allowance of interest, that it be affirmed; plaintiffs to pay the costs of appeal.

Rehearing refused by Division B, composed of Justices O'NIELL, LAND, and BAKER.