UNION ELECTRIC CO., APPELLANT, v. LOVELL LIVE-STOCK CO., RESPONDENT.

(No. 7,446.)

(Submitted January 11, 1936.  Decided January 5, 1936.)

[54 Pac. (2d) 112.]

*Mr. John Collins* and *Mr. H. G. Rodgers,* for Appellant, submitted an original and a reply brief; *Mr. Collins* argued the cause orally.

*Messrs. Gilbert, Gilbert & McFadden,* for Respondent, submitted a brief; *Mr. Theo. F. McFadden* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is the second appeal in a case wherein Union Electric Company, a public service corporation, owner and operator of an electric plant at Dillon, is the plaintiff, and Lovell Livestock Company, a corporation owning land adjacent to the plant, is the defendant. For a more complete statement of the case, see 93 Mont. 577, 20 Pac. (2d) 255.

The water used for generating power in the plant is discharged directly from a tailrace into a ditch on defendant's land. From thence it is conducted across the land of defendant and into what is known as the Sturgis ditch and on into the Beaverhead River. The Sturgis ditch was constructed for the purpose of conveying the waste water from the plant to the river so as to prevent the flooding of adjacent lands, particularly lands owned by one Rose Heavey, John Butala and others. Before this ditch was constructed, the parties to this action and others were involved in litigation by reason of flooding by such waste waters. On October 31, 1917, the electric company and the Lovell Company agreed on a basis of settlement, and on that day entered into a written agreement wherein the electric company was party of the first part and the Lovell Company was party of the second part. By the terms of the agreement the electric company was required to, and did, execute a quitclaim deed conveying to the Lovell Company "all of its right, title and interest in and to all the waters of Lovell's warm springs and Brown's springs, after their discharge from its hydro-electric plant," together with the full, complete and absolute control and use thereof. By that agreement the electric com-

pany also agreed to execute and deliver to the defendant a deed conveying to it certain land theretofore purchased by it from one George Rebich for right of way for the Sturgis ditch and upon which it was constructed.

The contractual part of the instrument was preceded by the recitation of certain reasons for making the agreement. Among these reasons it was recited that the parties desired to finally settle, adjust and determine all differences, disputes, claims and demands between them, with reference to all matters, things, claims and demands that then existed and arising since the Rose Heavey litigation, and as to the future use, control and domination of and over the waters of Lovell warm springs and Brown's springs and of the Sturgis ditch after the waters were discharged from the hydro-electric plant of the first party. It will thus be observed that very specific and plainly expressed reasons were recited as to the actuating causes for the agreement.

The contractual part of the agreement itself provided: ''And as a part of the consideration of this agreement and to the end of all controversies between the parties hereto arising or existing from all past transactions since the Rose Heavey litigation, it is agreed between the parties hereto, that from this date, the party of the second part will henceforth and forever, as against the party of the first part, maintain, operate and care for the said 'Sturgis ditch' and the waters of Lovell's warm springs and Brown's springs discharged and released from the hydro-electric plant of the first party to be conveyed therein, and will hold the said first party and its successors altogether harmless and free from any future costs incident to the maintenance of the said ditch and the diversion of the said waters thereby, and from all future costs, charges, trouble and damage, or litigation, by reason of or on account of the care, flow and control of said waters, excepting only such damages as may hereafter arise from negligence of the party of the first part.''

This contract remained in effect, and during the winters of 1920–21 and 1921–22 the Sturgis ditch filled with snow and ice,

and as a result the lands of one Butala were flooded. • Thereafter Butala instituted an action against plaintiff to recover damages. Plaintiff notified defendant of the pendency of the action, and demanded that it defend the same, but this defendant refused to do. Butala finally recovered a judgment against plaintiff, and, as a result thereof, plaintiff was compelled to pay him the sum of $882.30.

Thereafter, plaintiff brought this action against defendant under the indemnity provisions of the contract and sought, in addition to the amount of the judgment paid, the sum of $220.25 for attorneys' fees expended in the Butala action. The trial court awarded plaintiff only nominal damages, upon the theory that plaintiff and defendant were joint tort-feasors. Plaintiff appealed from the judgment to this court, where the judgment was reversed and a new trial ordered.

Before the second trial, defendant amended its answer so as to raise an issue not previously tendered, viz.: That at the time the contract was made, and prior thereto, plaintiff operated its plant in such manner that a constant flow of water was maintained in and through the Sturgis ditch; that the parties fully contemplated and intended that at all times during the life of the agreement plaintiff would continue to maintain a constant flow of water through the Sturgis ditch; that notwithstanding such understanding plaintiff ceased to use the water from Brown's springs, and otherwise changed the mode of operating its plant, and thereby prevented a continuous flow of water through the Sturgis ditch; that a continuous flow of water in the ditch was in and of itself sufficient to keep the ditch free and clear of ice and snow in the winter; that without such continuous flow of water in the ditch it was extremely burdensome and difficult for defendant to keep the ditch free of ice and snow so that there would be no flooding; and that, by virtue of these circumstances, the overflowing of the Sturgis ditch and the resulting injuries to Butala's lands were directly and proximately caused by "the failure, carelessness and concurring negligence

of plaintiff." These allegations were all denied by plaintiff in its reply to the amended answer:

The cause was tried to the court sitting with a jury. At the close of the evidence both sides moved for a directed verdict. Instead of granting either motion, the court propounded certain interrogatories to the jury. In response thereto the jury answered that plaintiff's operation of its plant at the time of making the contract produced and maintained a continuous flow of water through the Sturgis ditch; that subsequent to the execution of the contract, plaintiff so changed its mode of operation as to cause a cessation of the continuous flow of the water through the ditch, and that this materially increased the burden upon defendant in keeping the ditch clear of ice and snow so that it would carry the water discharged from the plant. Thereafter the court entered judgment for the defendant, and plaintiff prosecuted this appeal.

Plaintiff contends that the contract is clear and unambiguous, and that under the terms thereof the duty devolved upon defendant to keep the Sturgis ditch clear so that the water would pass through it and there would be no damage by flooding. Plaintiff also asserts that the affirmative matters set up in the amended answer, and the evidence adduced in support thereof, were ineffectual and inadmissible, in that they constituted an attempt to vary the terms of the written contract by parol evidence; and that the contract did not impose any duty upon plaintiff to continue using the waters of Brown's springs or to conduct its operations so as to provide a continuous flow of water through the Sturgis ditch.

Defendant insists that the contract is ambiguous and uncertain upon its face, and that parol evidence was admissible for the purpose of aiding the court in interpreting the contract with respect to the question of whether the parties thereto intended that plaintiff should continue to conduct its operations in the manner employed at the time the contract was made. Defendant argues that plaintiff was under a duty implied by the written contract to so continue its operations that a con-

tinuous stream of water would flow through the ditch, and that in failing to do so it made it virtually impossible to keep the ditch free of ice and snow, and thereby discharged defendant from the duty otherwise imposed upon it by the terms of the contract.

Defendant contends that where, as here, there is nothing expressed in the contract to the contrary, the law presumes that the parties contracted with reference to the facts as they existed at the time, citing *Murphy* v. *Stone & Webster Engineering Corp.*, 44 Mont. 146, 148, 119 Pac. 717, 719, Ann. Cas. 1913A, 1334. We do not believe that the cited case sustains such an extreme position. The court there said: "In seeking the intention of the parties, the language used will not be so construed as to give it the effect of an admission of a fact obviously intended to be controverted, or the waiver of a right not plainly intended to be relinquished."

This court has on numerous occasions announced the rules with reference to the construction and interpretation of contracts. These cases and the rules therein announced are well summarized in *Brown* v. *Homestake Exploration Co.*, 98 Mont. 305, 39 Pac. (2d) 168, 174, as follows: "In the case of *McDaniel* v. *Hager-Stevenson Oil Co.*, 75 Mont. 356, 243 Pac. 582, 584, this court said: 'A contract may not be changed or revised under the guise of interpretation. Where a contract is plain and clear in its terms, neither interpretation nor construction is permissible. * * * When the language employed by the parties "is free from ambiguity or uncertainty, it is beyond the power of the court to enlarge or restrict its application or meaning." * * * And, when the terms of a contract are plain and unambiguous, resort may not be had to extrinsic circumstances under the pretense of ascertaining its meaning.' "

Thus it must be observed that where, as in the instant case, there is no showing of fraud, accident or mistake, oral evidence cannot be admitted to alter, add to, or contradict the plain terms of a written contract, and "this rule is applicable to evidence offered for the purpose of establishing an oral warranty, where

presumptively, the parties have reduced their entire contract to writing." (*York* v. *Steward,* 21 Mont. 515, 55 Pac. 29, 30, 43 L. R. A. 125; compare *Hogan* v. *Kelly,* 29 Mont. 485, 75 Pac. 81; *Western Loan & Savings Co.* v. *Smith,* 42 Mont. 442, 113 Pac. 475; *Ford* v. *Drake,* 46 Mont. 314, 127 Pac. 1019; *Roecher* v. *Commercial National Bank,* 87 Mont. 570, 289 Pac. 388; *Hill Cattle Corp.* v. *Killorn,* 79 Mont. 327, 256 Pac. 497.)

Evidence of intention not expressed in the contract is inadmissible. (Page on Contracts, sec. 2146; *Armington* v. *Stelle,* 27 Mont. 13, 69 Pac. 115, 116, 94 Am. St. Rep. 811.) In the last-cited case it was said: "The unexpressed motive or mental reservation entertained by the defendants could not aid the court in arriving at a correct conclusion, nor could the defendants be permitted to testify to it in order to modify or add to the express words of their contract." (See, also, *Frank* v. *Butte & Boulder M. & L. Co.,* 48 Mont. 83, 135 Pac. 904.)

In the light of these rules we have no hesitancy in holding that the contract in question is not properly subject to the elaborated interpretation or extended construction proposed by defendant. It is perfectly clear and unambiguous. It does not disclose either directly or by implication any agreement or warranty on the part of plaintiff to adhere to or follow any particular course in operating its plant or to provide for the maintenance of a continuous flow of water in the Sturgis ditch. To hold that such a covenant or warranty existed or was implied must necessarily involve the enlargement of the terms of the contract far beyond its express terms. Under the guise of interpretation, "a court of law has no right to presume contracting parties intended to insert in a written contract a provision other or different from that which the plain language used would indicate, and then give a construction to the contract which would be legitimate if the contract contained the supposed omitted provision. Such a practice would, in effect, be making contracts for parties, which courts are powerless to do." (*Fitzgerald* v. *Staples,* 88 Ill. 234, 30 Am. Rep. 551.)

On the former appeal of this case (93 Mont. 577, 20 Pac. (2d) 255, 257) we recognized the indemnity feature of the contract, and called attention to the necessity for liberal construction in favor of the party intended to be indemnified—the plaintiff. In order to sustain defendant's present contention we would be forced to abandon that well-established principle of law and construe the contract more liberally in favor of defendant. We would necessarily have to give to this contract "the effect of an admission of a fact obviously intended to be controverted, or the waiver of a right not plainly intended to be relinquished," under the pretense of seeking the intention of the parties; the very thing which this court in *Murphy* v. *Stone & Webster Engineering Co.*, supra, declared could not be done.

It follows that the relative rights and liabilities of the parties to this contract, as well as their intention and understanding, must be ascertained from the express terms of the contract without regard to extrinsic facts and circumstances. The contract expressly provides that the duty rests upon defendant to keep the ditch free from snow and ice. There is no showing that plaintiff breached or violated any express provisions of the contract, or failed in respect to any duty therein declared and imposed. There is no showing of any breach of duty or any negligence on the part of plaintiff, which, under the terms of the contract, might excuse defendant from performing the duties and obligations otherwise imposed upon it. We are still impressed by the considerations heretofore mentioned in the previous opinion, to the effect that "the agreement, construed in the light of the circumstances existing at the time it was made, and keeping in mind the intention of the parties as shown by the instrument, impels the conclusion that the negligence of plaintiff, which was excepted by the terms of the contract, was some want of care in some duty other than that of keeping the ditch free from snow and ice sufficient to carry the usual flow of water from plaintiff's plant." The damage to Butala's land and crops was caused by accumulation of snow and ice in the Sturgis ditch, and that condition of the ditch was due to de-

fendant's failure to comply with a duty specifically imposed upon it by terms of the contract. Obviously, therefore, under the terms of the contract, plaintiff is entitled to be indemnified for damages incurred by it as a result of the Butala action.

There is no merit in the suggestion advanced by defendant, that it was excused from performing this duty because plaintiff in ceasing to use the water from Brown's springs, and in otherwise changing the mode of operating its plant, had made it virtually impossible for defendant to keep the ditch clear and free of snow and ice so that water would pass through it. The authorities cited by defendant, to the effect that a party who makes performance of a contract impossible cannot recover damages from the adversary party for not performing, are not applicable or controlling here. The evidence on that subject, viewed in the light most favorable to defendant, fails to show that it was impossible for defendant to keep the ditch free and clear of snow and ice so that there would be no flooding. It is true there is evidence to the effect that the change in mode of operating the plant and the consequent cessation of a continuous flow of warm water through the ditch resulted in materially increasing defendant's contractual burden in keeping the ditch clear. This, however, was not enough to relieve defendant of the plain and unequivocal duty imposed upon it by the terms of the contract. As was said in the case of *Waite* v. *Shoemaker & Co.*, 50 Mont. 264, 146 Pac. 736, 742: "It is entirely competent for one to contract to do a difficult piece of work in a particular way. The fact that it is discovered to be more difficult than was anticipated is no reason why the engagement to accomplish it should not be observed. * * * The difficulty of performance encountered by the obligor whereby performance cannot be accomplished without greater expense, destroying the prospect of profit for him, is not a sufficient reason to justify an abandonment of his obligation or to stop short of a full and substantial discharge of it. He is not therefore authorized to substitute his judgment, as to what ought to be accepted as a fulfillment of the contract, for what the contract itself calls for."

The duty of a court is not to make contracts for the parties but to enforce their contract, as made by them, even though it is found to be burdensome. (*Hinerman* v. *Baldwin*, 67 Mont. 417, 215 Pac. 1103; *Wheeler* v. *James*, 70 Mont. 37, 223 Pac. 900.)

For the reasons herein stated, we are of the opinion that the district court should have entered judgment for plaintiff. Accordingly, the judgment is reversed and the cause remanded, with directions to that court to enter such a judgment.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS and ANDERSON concur.

MR. JUSTICE MORRIS: I dissent. The contract between the parties involved in this controversy is comprised of an agreement in writing and a quitclaim deed. The two instruments must be construed together. (*Lyon* v. *Dailey Copper, M. & S. Co.*, 46 Mont. 108, 126 Pac. 931; *Cooper* v. *Goble*, 77 Mont. 580, 252 Pac. 362; sec. 7533, Rev. Codes 1921.) Contracts must be interpreted not only by the language used, but from the surrounding circumstances existing at the time the contract is agreed upon. (*Quirk* v. *Rich*, 40 Mont. 552, 553, 107 Pac. 821.)

The consideration moving from the plaintiff to the defendant in the contract before us was the use of the waters of the two springs described in the contract after such waters were used in and discharged from the plaintiff's hydro-electric plant into ditches connecting with the Sturgis ditch; the consideration moving from the defendant to the plaintiff was $500 cash and defendant's agreement to care for and maintain the Sturgis ditch for the purpose of protecting plaintiff from damages arising from the ditch's overflowing and injuring the lands and premises of adjoining land owners or tenants. The condition that had troubled the plaintiff theretofore arose from snow and ice blocking the ditch, impeding the flow of the discharged waters therein, and the overflow flooding the lands of others for which it was held in actions for damages.

The special interrogatories were submitted to the jury as follows:

"Interrogatory No. 1. Did the usual and customary method of operation of plaintiff's hydro-electric plant at the time of the execution of the contract between the plaintiff and defendant produce and maintain in and through the Sturgis ditch a continuous flow of water? Answer: Yes.

"Interrogatory No. 2. If there was a continuous flow of water at the time mentioned in Interrogatory No. 1, did the change in operations which took place thereafter cause a cessation of such continuous flow? Answer: Yes.

"Interrogatory No. 3. If you find that the change in operations caused a cessation of the continuous flow of water in the Sturgis ditch, did that cessation materially increase the burden upon the defendant in keeping said ditch clear of ice and snow and capable of carrying the water discharged from the electric plant of plaintiff beyond or over what it would have been if the continuous flow had been maintained? Answer: Yes."

Subsequent to the execution of the agreement the plaintiff abandoned the use of the waters of one of the two springs, and without the consent or approval of the defendant. The Sturgis ditch ran through flat land for approximately two miles; it was open country and the wind had a free sweep across the ditch; the ditch was approximately 10 feet wide and 5 feet deep, and in places 15 feet deep. The testimony is to the effect that when snow was on the ground and a blizzard was on, the ditch would fill and block the flow of water within a period of half an hour. It is a matter of common knowledge that flowing water greatly reduces the labor necessary to keep such a ditch clear of ice and snow, and that is the import of the jury's answer to interrogatory No. 3; that is, that when the plaintiff ceased to use the waters of Brown springs, the continuous flow of water in the ditch ceased and such cessation increased defendant's burden in keeping the ditch open.

Here we have a contract between the parties where the burden placed upon one of the parties was materially increased by the voluntary act of the other subsequent to the execution of the contract, and no additional consideration given the party whose

burden was so increased, and its consent was not asked nor given. This contract binds the defendant "henceforth and forever," but obviously the plaintiff takes the position that it shall be bound only at its pleasure. If it may cease to use and cause to flow through its plant the waters of one of the two springs that it used when the contract was made and entered into, then it may with equal right cease to use both of the springs and all of the water, without consulting the defendant, and if it might do that one, two or three years after the contract was entered into, it could, with equal right, have ceased the day after the contract was made, and also have kept defendant's $500. Logically, I am unable to see how any other conclusion could be arrived at under the majority opinion; the plaintiff is given a free hand to do as it pleases, while the defendant is held to strict compliance with the terms of the contract, irrespective of any breach by the plaintiff.