MAXWELL, Appellant, vs. STACK and another, Respondents.

*January 19—February 13, 1945.*

492

For the appellant there were briefs by *James J. McDonald, Sanborn, Blake & Aberg,* and *Edwin Conrad,* all of Madison, and oral argument by *Mr. W. J. P. Aberg* and *Mr. Conrad.*

For the respondents there were briefs by *Hill, Beckwith & Harrington,* attorneys for the Ætna Casualty & Surety Company, and *Hall & Griffith,* attorneys for Esther Stack, all of Madison, and oral argument by *John Harrington, D. V. W. Beckwith,* and *Paul Griffith.*

ROSENBERRY, C. J.    This is an action upon the official bond required of the defendant Stack by the provisions of sec. 62.09 (9) (f), Stats.

Upon this appeal it is contended that the trial court was in error in holding that the six-year statute of limitations applied; that the liability accrued prior to April 1, 1937; that the action not having been begun until the 2d day of April, 1943, plaintiff's claim was barred under the six-year statute.

Under the terms of the bond given by the plaintiff to the city, there can be no doubt that the plaintiff was liable for the misappropriation of funds by his subordinates.    See Restatement, Security, sec. 174, comment *a.*

While the bond given by the defendant Stack to the city of Madison is not in the customary form, it is in the form prescribed by statute.    There can be no doubt that as between the city of Madison and the defendants, the city is the creditor,

Esther Stack (Mergen) the principal, and the company, the surety. This appears from the fact that the condition of the bond is that the principal will faithfully discharge the duties according to law and will pay to the parties entitled to receive the same such damages, not exceeding in the aggregate $10,000 as they may sustain as a consequence of her failure to perform her duties. While the demurrer in this case is not a general demurrer but is put upon the ground that the plaintiff's cause of action is barred by certain statutes of limitation, in order to reach a determination with respect to the bar of the statute of limitations it is necessary to ascertain what cause of action, if any, is stated in the complaint and when such cause of action arose.

It is the contention of the plaintiff that he has a direct cause of action upon the bond·by reason of the failure of the defendant Stack to perform her official duties, resulting in damage to him as alleged in the complaint, and that this cause of action arose when payment was made to the city of Madison.

In the complaint it is alleged that commencing on or about May 11, 1936, some person or persons without the knowledge of the plaintiff, removed cash from the city's funds which were in charge of the plaintiff; that such removals were concealed from the plaintiff by the defendant Stack. Her defaults are set out in par. 9 of the complaint where it is alleged that although she had knowledge—

"of the items included in the deposit slips and reports so prepared by her during said period, she made no mention in her daily cash reports of shortages or overages caused by such removals from cash, and failed to report the receipt of the check for $2,921.21 issued by Dane county and delivered to the city of Madison, and failed during all of said period [May 11, 1936, to March, 1937] to report any of such shortages in city funds either to this plaintiff or to the city auditor."

In par. 14, it is alleged that—

"because of the said neglect of duty and failure on the part of the defendant Esther Stack faithfully to discharge the duties of her said office according to law, and because of her failure in particular to report any shortage which occurred to this plaintiff . . . the said Esther Stack breached and violated the conditions of her said bond by reason of which violations and breaches this plaintiff suffered damages as above set forth."

The allegations in par. 10 already set out are to the effect that the plaintiff was required to pay into the city treasury the amount of the said shortages,—

"said repayment being required because of this plaintiff's responsibility under his official bond," resulting in loss and damage to him in that amount.

The plaintiff does not allege that he was required to make the payment by reason of the failure of the defendant Stack to perform her official duties.

It is alleged in par. 11 that he was obliged to resign from his office, and in par. 12 that as a result of plaintiff's resignation, made necessary by cancellation of his bond, and also by reason of the reflections upon plaintiff's character and integrity which resulted from the situation in which he was placed *by reason of the aforesaid shortages,* the plaintiff was unable to procure employment, and that plaintiff's total damage by way of salary alone, amounts to $3,125. It is clear that the shortages were not due to defendant Stack's failure to report them. She could not report them until they were made.

It is alleged in par. 13 that the plaintiff suffered injuries to his reputation for honesty and integrity and that the same was caused by the failure of the defendant Esther Stack faithfully to discharge the duties of her office.

The gravamen of the allegations contained in pars. 10, 11, and 12 is that the plaintiff was required to make good the shortages. It is nowhere alleged that the defendant Esther Stack was responsible for the shortages. It does not appear that she handled any cash, but that instead it was her duty to make up the deposit slips and make a daily report of cash receipts, and her duty to report to the city treasurer and the city auditor the disposition of all cash receipts by deposits in the several city depositories. It thus appears from the allegations of the complaint that all of the damages sustained by the plaintiff, except that stated in par. 13, were due to the shortages which plaintiff was required to make good under his bond.

In par. 14 it is alleged that because of the said neglect of duty and failure on the part of the defendant Esther Stack faithfully to discharge the duties of her said office according to law, the said Esther Stack breached and violated the conditions of her bond by reason of which violations and breaches the plaintiff *suffered damages as above set forth*. The damages referred to are set forth in pars. 10, 11, 12, and 13, already commented upon. As already pointed out, the damages set out in par. 10 were due to the payment the plaintiff was required to make under his official bond *on account of shortages*. In par. 11 it is alleged that immediately upon discovery of *shortages* his bond was canceled *because of the existence thereof* as a result of which the plaintiff resigned. In par. 12, it is alleged that the plaintiff's resignation was made necessary by reflections upon his character which resulted from the situation in which he was placed *by reason of the aforesaid shortages*. In par. 13 it is alleged that he suffered injury to his reputation for honesty and integrity in the failure of Esther Stack to discharge the duties of her office in the sum of $5,000. If the plaintiff sustained damages by reason of the defendant Stack's breach of her bond, the allegation as to such damage is to be found solely in par. 13.

It is a rule of law that a pleader is not required, in order to state a cause of action, to allege damage where from the facts alleged it appears that damage resulted as a matter of law. Where, however, it is sought to recover special damages such damages must be pleaded and there must be an allegation that the damages were caused by the facts which gave rise to the cause of action. *Bergeron v. Peyton* (1900), 106 Wis. 377, 382, 82 N. W. 291; *Scofield v. Milwaukee Free Press Co.* (1905) 126 Wis. 81, 105 N. W. 227; 2 Sutherland, Damages (4th ed.), p. 1364, sec. 419.

The duties which the defendant Esther Stack promised faithfully to discharge were duties which she owed to the city of Madison, from which she held the office of assistant city treasurer. While the official bond is so framed as to give a cause of action to third parties who sustain damage by reason of her failure to discharge her duties, as to third parties such damages are clearly special, and allegations that she gave the bond, that she breached the bond in failing faithfully to discharge her duties would state no cause of action in favor of a third party, therefore the allegations as to damages are an integral part of the statement of plaintiff's cause of action. Assuming, but not deciding, that the damages alleged in par. 13 are not remote or consequential, the statement of a cause of action is concluded in that paragraph. Such damages are not stated either in par. 10, 11, or 12. The damages which the plaintiff sustained, if any, are alleged in those paragraphs to be due to the shortages. The shortages must have occurred before there was any duty on the part of the defendant Stack to report them. They were therefore antecedent to any failure on her part to discharge her duty to report them. So that the allegations in par. 14 that the plaintiff suffered damages by reason of the defendant Stack's violation of her bond as above set forth apply only to the allegations contained in par. 13.

Assuming that a cause of action is stated as to the special damage set out in par. 13, when did it arise? The general rule is that an action for damages for breach of a contract arises when the breach occurs and that the statute of limitations begins to run from that time. This is true although a party may remain in ignorance of the facts which give rise to his cause of action. Nor is the running of the statute postponed by reason of sec. 330.19 (7), Stats., relating to the discovery of a fraud. *Darling v. Nelson* (1920), 171 Wis. 337, 346, 176 N. W. 847.

The plaintiff contends that the contract in this case is one of indemnity and that his right of action did not arise until he paid the amount of shortages to the city. This contention fails to take note, first, of the distinction between a strict contract of indemnity and a contract to pay; second, that the plaintiff paid no damage caused by defendant Stack's failure to perform her official duties. A contract may do both, as was the case in *Illinois Surety Co. v. Maguire* (1912), 150 Wis. 544, 137 N. W. 782. An insurer agreed to pay an employer all sums "for which he shall become liable to his employees." It was held that a contract of indemnity against liability was created and the employer need not pay the claim in order to maintain an action against the insurer. *Hoven v. Employers' Liability Assurance Corp.* (1896) 93 Wis. 201, 207, 67 N. W. 46. See also 42 C. J. S. p. 588, sec. 14, Indemnity against Liability, and cases cited.

The contract upon which this action is brought is clearly and unmistakably a contract against liability. As between the defendant Stack and her codefendant she is undoubtedly a principal and her codefendant a surety, but as between the defendant Stack and her insurer and third parties it is a contract against liability. The codefendants are liable jointly and severally to any person who sustains damages by reason of the failure of the defendant Stack faithfully to discharge her official duties. This is an original undertaking by each of the

defendants to pay, and is not an agreement to save harmless or on the part of the surety to pay if the principal does not.

The liability of the insurer here was incurred when the defendant Stack breached the contract and she and the insurer became jointly liable for any damages suffered by the plaintiff "in consequence of her failure so to discharge such duties."

It is also obvious that the payment of the amount of the shortages by the plaintiff could not have resulted from the failure of the defendant Stack faithfully to discharge her official duties. As already pointed out, there was no duty upon her to report the shortages before they occurred. The city of Madison sustained its loss which the plaintiff made good, when some person or persons unknown to the plaintiff abstracted its funds. The city did not suffer a second loss by reason of the failure of the defendant Stack to make a proper report.

The action having accrued at the time of the breach of the bond which was between May 1 and September 16, 1936, the question arises, what statute of limitations, if any, is applicable? It is the contention of the plaintiff that the instrument sued upon is a sealed instrument. It will be noticed from an examination of the copy of the bond that the corporate seal of the defendant insurer was affixed to the bond. This the plaintiff contends made the bond an instrument under seal. The plaintiff relies upon *Banking Comm. v. National Surety Corp.* (1943) 243 Wis. 542, 545, 11 N. W. (2d) 171. It appears in that case that it was not necessary to a decision for the court to determine whether the bond in question was a sealed instrument. Preliminary to dealing with the question for decision, the court said:

"At the outset, certain matters may with some profit be dealt with. This is an official bond. In the Restatement of Security, introductory note, page 468, 'official bond' is defined as 'an instrument under seal by which a public officer undertakes to pay a sum of money if he does not faithfully

discharge his office, or by which a surety undertakes that if the officer does not do so, the surety will be liable in a penal sum.'"

From this it is argued that all official bonds are sealed instruments. The question for decision in the case cited was the extent of the officer's liability for interest earned or which should have been earned on public funds, and for the profits made by illegal investments and whether the surety was liable for profits made by the officer as a result of the illegal use of public funds. An examination of the case and briefs in *Banking Comm. v. National Surety Corp., supra,* shows that the question of whether the bond sued upon was a sealed instrument was not presented or suggested. No doubt the quotation from the Restatement of Security is a correct statement of the law but it is a rule of law which is not applicable under the statutes of this state.

Ch. 19 of the statutes was created by ch. 93, Laws of 1919, which was a revisor's bill. In a note to sub. (2), which prescribes the form of an official bond, the revisor said:

"This form is simple. It is modeled, so far as practicable, after the form of the oath prescribed by subsection (1), and the form of the oath is fashioned wholly by the language of the constitution. It dispenses with seals. It names no obligees, but the subscribers undertake to respond to any party damaged by a breach, whether that party shall be the state, a municipality, a board or commission, or a person." (Such period to commence running when such municipality receives knowledge of the fact that a default has occurred in some of the conditions of such bond and it was damaged because thereof. Sec. 330.20, Stats.)

Sec. 330.20, Stats., has no application to this case as this is not an action by a county, town, village, city, or school district. It is true that sec. 19.01 (2) describes the instrument as an official bond but sub. (2) also provides that the instrument "shall be in substantially the following form,"

and while a place for the signature of the principal and surety are indicated, there is no indication that a seal should be attached. Under this statute, the official bonds of public officers in this state are not sealed instruments. It was so held without exposition in *Banking Comm. v. Rothe* (1942), 239 Wis. 529, 2 N. W. (2d) 220.

The plaintiff further contends that even if the statute does not require that an official bond be executed under seal, nevertheless the corporate seal of the surety company was attached to this bond and it thereby became a sealed instrument. Plaintiff relies in part upon sec. 235.17, Stats., which reads:

"A scroll or device as a seal upon any conveyance of lands or other instrument whatever, whether intended to be recorded or not, shall have the same force and effect as a seal attached thereto or impressed thereon and the conveyance or instrument be of the same obligation as if actually sealed; *but this section shall not apply to such official or corporate seals as are or may be provided by law. . . .*"

In the case of *Davis v. Judd* (1858), 6 Wis. *85, it was held that the mere fact that the writing concluded with the words: "Witness my hand and seal" does not make a sealed instrument, no seal or scroll having been added. On the other hand, in the case of *Oconto County v. MacAllister* (1914), 155 Wis. 286, 143 N. W. 702, the court held that—

An instrument in the form of a bond which was executed by a county treasurer and sureties under a statute in terms requiring a bond, and which expressly states upon its face that it is sealed with the seals of the signers, must be considered a sealed instrument, although there is no scroll or other indication of a seal after the signatures.

With regard to the use of corporate seals, 3 Thompson, Corporations (3d ed.), p. 646, sec. 2029, says:

"Under the doctrine of the older cases, and the theory that the seal was the method of signing the corporate name, it is

apparent that this rule of sealed and unsealed instruments could not be applied to corporations. The fact that the cases now hold that corporations may generally contract without the use of the seal, should not be construed to mean that when the corporate seal is attached to what would otherwise be a simple contract, it is then converted into a specialty. The form and character of the instrument, together with the purposes of the execution, may be examined in case of uncertainty in determining whether it is sealed or unsealed."

In the absence of a controlling statute, the general rule is that where a corporate seal is affixed to an instrument which would otherwise be a simple contract and there is nothing more, the character of the instrument is not changed. In the case of *Oconto County v. MacAllister, supra,* the fact that the bond was given in compliance with the statute which requires the instrument to be a sealed instrument and there was a proper recital within the body of the bond, it was held to be a sufficient compliance with the statute.

In the case of *Davis v. Judd, supra,* where a similar situation existed, a like recital was held not sufficient to make the instrument an instrument under seal. While there are many cases holding that the affixing of a seal without anything more makes the instrument a sealed instrument, by far the greater number of these cases apply to instruments executed by a natural person and not by a corporation. See *Williams v. Peninsular Grocery Co.* (1917) 73 Fla. 937, 947 *et seq.,* 75 So. 517; *Drexler-Rochester Properties, Inc., v. Paris* (1932), 236 App. Div. 409, 259 N. Y. Supp. 601; *Weeks v. Esler* (1894), 143 N. Y. 374, 38 N. E. 377; *Empire Trust Co. v. Heinze* (1926), 242 N. Y. 475, 479, 152 N. E. 266.

The reason for the rule is stated in *Matter of Pirie* (1910), 198 N. Y. 209, 215, 91 N. E. 587:

"Ordinarily a seal affixed to a paper in the form of a promissory note changes it into a sealed instrument, which, under the statute of limitations, may run for twenty years;

but the mere attaching of a seal after the signature does not raise a presumption that the note is a sealed instrument, unless there be a recognition of the seal in the body of the instrument, by some such phrase as 'witness my hand and seal' or 'signed and sealed.' The reason for this is that the mere attaching of a seal after the signature without any recognition of it in the body of the note or in connection with the signing, in the absence of evidence showing the time when, and the person by whom, the seal was affixed, would open the door to frauds and forgeries and enable evil-disposed persons to prevent the running of the six years' statute of limitations, by merely attaching at the end of the note a seal. Under such circumstances a seal is regarded merely as surplusage and the character of the note is not changed."

While this case dealt with signing by a natural person, the same rule was applied in *Weeks v. Esler, supra,* to a corporation. In 6 Fletcher, Cyc. Corp. (perm. ed.) p. 148, sec. 2466, it is said:

"The modern and more sensible doctrine is that the seal of a corporation itself performs no further or greater function than to import *prima facie* verity of the due execution by the corporation of the written obligation."

In this case, the statute requires no more than the execution of a simple contract. There is nothing to indicate either upon the face of the instrument or in the evidence that the defendant company intended to do anything more than to comply with the statutory requirement. In considering the cases dealing with corporate seals regard must always be had to statutory provisions. It is considered that by the great weight of authority, nothing more appearing than that the corporate seal is affixed to an instrument, not required to be under seal and in form a simple contract, the affixing of the corporate seal does not make the instrument an instrument under seal. The bond in this case not being a sealed instrument, the defendant Stack, by executing the bond, did not adopt the seal of the defendant company. See *Rollins v.*

*Humphrey* (1897), 98 Wis. 66, 73 N. W. 331; *Yale v. Flanders* (1854), 4 Wis. *96. The bond not being under seal and the cause of action having arisen more than six years prior to the commencement of the action, the action is barred by the statute, sec. 330.19 (3), and the trial court correctly so held.

*By the Court.*—The order appealed from is affirmed, and the cause is remanded to the trial court for further proceedings according to law.

FRITZ, J., dissents.