[Civ. No. 16332.   Second Dist., Div. Three.   Nov. 30, 1948.]

JAMES H. ALBERTS et al., Respondents, v. AMERICAN CASUALTY COMPANY OF READING, PENNSYL-VANIA (a Corporation), Appellant.

Forrest A. Betts for Appellant.

Sidney Fischgrund for Respondents.

VALLÉE, J.—Appeal by defendant American Casualty Company of Reading, Pennsylvania, referred to as defendant, from a judgment for plaintiffs in the amount of $2,813.82 in an action on a policy of insurance indemnifying plaintiffs against loss "through . . . wrongful abstraction, wilful misapplication, or other . . . dishonest act or acts committed by any one or more of the employees of the plaintiffs, for the period from March 18, 1945, to June 18, 1945."

During 1945, plaintiffs were the owners of a hotel. They alleged that between March 18, and June 18, 1945, they suffered a loss of $1,888.82, belonging to them, and of $925, belonging to a guest of the hotel, as a result of the wrongful abstraction or wilful misapplication of the money by an employee of plaintiffs at the hotel. Paragraph V of the complaint alleged: "That on or about the 18th day of April, 1945, in the City of Los Angeles, County of Los Angeles, State of California, the defendant, American Casualty Company of Reading, Pennsylvania, a corporation, by and through its duly appointed and acting agent and representative, issued and delivered to the plaintiffs a written agreement known as an 'Insurance Coverage Binder', whereby the said defendant . . . agreed to be bound by the terms and conditions of an insurance policy known as 'Primary Commercial Bond', where-

in the said defendant . . . assumed and agreed to indemnify the plaintiffs against any loss of money belonging to the plaintiffs, or in which the plaintiffs have a pecuniary interest, or held by the plaintiffs as collateral, or held by the plaintiffs as bailee, trustee or agent, and whether or not the plaintiffs are legally liable for the loss thereof, which the plaintiffs shall sustain, to a net amount not exceeding, in the aggregate, the sum of Ten Thousand ($10,000.00) Dollars, through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wilful misapplication, or other fraudulent or dishonest act or acts committed by any one or more of the employees of the plaintiffs for the period from April 18, 1945, to June 18, 1945." Paragraph VI alleged: "That by reason of the issuance of the said written agreement, known as an 'Insurance Coverage Binder', by the defendant, General Agencies of New York, Inc., as the agent and representative of the defendant . . . to the plaintiffs, the said defendant . . . was bound by the provisions contained in a standard form of insurance policy known as a 'Primary Commercial Bond' of indemnity insurance, and all the indemnity benefits thereof were thereby in full force and effect from the 18th day of March, 1945, to the 18th day of June, 1945."

These allegations of the complaint were answered as follows: "In answering paragraph V, defendant alleges that on or about April 18, 1945, defendant acting through its duly appointed agent, General Agencies of New York. Inc., delivered a supplemental written agreement to be bound by the terms and conditions in the insurance policy known as the 'Primary Commercial Blanket Bond'. Defendant further alleges that a specimen copy of said bond is attached hereto, marked 'Exhibit A' and by this reference is incorporated herein as though fully set forth. Defendant further alleges that under its terms and conditions, the said agreement was to be in full force and effect from April 18, 1945 to June 18, 1945. Except as herein above alleged, defendant denies generally and specifically each and every allegation contained in paragraph V and the whole thereof," and "Answering paragraph VI, defendant alleges that the agreements referred to in paragraphs IV and V herein above, were executed and delivered upon the strength of and in reliance upon representation made by plaintiff in the application for said 'Primary Commercial Blanket Bond'; that said representations were concerning the time, place and manner making

audit of cash and account and of making complete inventory; that the said audits and inventories were not made at the time and in the manner specified by plaintiff in said application for said 'Primary Commercial Blanket Bond'; that said agreements would not have been executed and delivered had the true facts been known; and that valid contract, agreement, or policy of insurance never existed between plaintiff and defendant.''

The specimen copy of the ''Primary Commercial Blanket Bond'' attached to defendant's answer is a printed form of insurance policy. The name of the insured, the amount of insurance and the term are blank. By its terms defendant agrees to indemnify the insured ''against any loss of money or other property, real or personal . . . belonging to the Insured, or in which the Insured has a pecuniary interest, or for which the Insured is legally liable, or held by the Insured in any capacity whether the Insured is legally liable therefor or not, which the Insured shall sustain, to an amount not exceeding in the aggregate the sum of _____ Dollars ($_____) through . . . wrongful abstraction, wilful misapplication, or other fraudulent or dishonest act or acts committed by any one or more of the Employees as defined in Section A, Paragraph 2, acting directly or in collusion with others, during the term of this bond as defined in Section A, Paragraph I, and while this bond is in force as to the Employee or Employees causing such loss, and discovered . . .'' Section A, paragraph 2, in part, reads: ''The word 'Employee' or 'Employees', as used in this bond, shall be deemed to mean, respectively, one or more of the natural persons . . . who, on the effective date of this bond, or at any other time during the term of this bond, are in the regular service of the Insured in the ordinary course of the Insured's business, and who are compensated by salary, wages, and/or commissions, and whom the Insured has the right to govern and direct at all times in the performance of such service.''

The court found that the facts respecting the loss as alleged by plaintiffs and the allegations of paragraph V and VI of the complaint were true. It also found that paragraph VI of defendant's answer was untrue.

Appellant urges: (1) that plaintiffs did not establish that the amount of the indemnifying agreement was in the sum of $10,000 or in any amount; (2) that there is no evidence that plaintiffs sustained any loss of money belonging to plain-

tiffs between March 18 and June 18, 1945; and (3) that there is no evidence that plaintiffs sustained a loss of money belonging to the guest.

█ Plaintiffs did not make proof of the amount of the "Primary Commercial Blanket Bond." Defendant concedes: "It was admitted by the pleadings that there was a written agreement by the defendant to be bound by the terms of the said specimen 'Primary Commercial Blanket Bond' from the period of time from March 18, 1945 to June 18, 1945." It is our opinion that defendant, by its answer, admitted that the amount of the bond was in excess of the amount of the judgment. The effect of the answer was to expressly admit all allegations of paragraph V of the complaint except the allegation that the amount in which defendant indemnified plaintiffs was "to a net amount not exceeding, in the aggregate, the sum of Ten Thousand ($10,000.00) Dollars." The denial of the amount is merely a denial that the amount of the bond did not exceed, in the aggregate, the sum of $10,000. It is an admission of the specific proposition embraced in the averment to which it is directed. It is evasive and insufficient to raise an issue. The precise question was passed upon in *Armer* v. *Dorton*, 50 Cal.App.2d 413, 415 [123 P.2d 94]. There the complaint alleged that the plaintiff had been deprived of the use of his automobile for 21 days and that the reasonable value of such use was $105. The only denial in the answer was a denial of each of said allegations without any denial that the reasonable value of the use was a lesser sum. It was held that the denial was a negative pregnant and that it was an admission that the reasonable value of the loss of use was in any sum less than $105. (See, also, *California Trust Co.* v. *Gustason*, 15 Cal.2d 268, 271 [101 P.2d 74]; *Braun* v. *New York Life Ins. Co.*, 46 Cal.App.2d 335, 337 [115 P.2d 880]; *United Air Services, Ltd.* v. *Sampson*, 30 Cal.App.2d 135, 145 [86 P.2d 366].) Further, plaintiffs say, and defendant does not deny, that the point was not made in the court below either upon the trial or upon defendant's motion for a new trial and that it is made for the first time on appeal. █ It is an elementary principle of appellate practice that a party will not be permitted to make evasive denials, mislead his adversary and the trial court and profit thereby on appeal. (*Osborn* v. *Hoyt*, 181 Cal. 336, 341 [184 P. 854]; *Shriver* v. *Silva*, 65 Cal.App.2d 753, 767-768 [151 P.2d 528].) A court is not a chessboard nor the judicial process a game of chance.

Defendant's admission obviated the necessity of evidence as to the amount of the bond. (*Razzano* v. *Kent*, 78 Cal.App.2d 254, 259 [177 P.2d 612].) The allegations of the complaint admitted by the answer are treated as an admitted fact on appeal. (*Sterling* v. *Title Ins. & Trust Co.*, 53 Cal.App.2d 736 [128 P.2d 31].)

The evidence discloses the following facts: One of plaintiffs, long before the period here involved, installed a bookkeeping system for keeping records of the accounts, receipts and deposits of the hotel. The system was in effect during the period in question. Records of the hotel receipts were sent to this plaintiff each day and were made on what was called a "daily cash sheet." At the end of each day the manager of the hotel posted these figures in his own handwriting on what was known as a "daily report." A day was from 7 o'clock in the morning to 7 o'clock the next morning. The system required all monies collected on one day to be deposited in a bank on the next day,—a separate deposit for each day. The deposits were made on a bank deposit slip to correspond with the receipts of a particular day. The manager of the hotel had custody of all money collected and made all bank deposits. He was from three to ten days late in depositing the daily receipts in the bank. The delay was occasioned by his inability to get to the bank and because of intervening holidays and week ends. The daily receipts were kept in separate envelopes and the bank deposit slip was made for the precise amount of the daily receipts enclosed in each envelope. Until the cash in each envelope was taken to the bank, the envelope with the cash in it was in the custody of the manager and kept by him in the hotel safe. Early each month one of the plaintiffs verified the amounts collected and deposited in the bank and counted the money which was in the safe in the respective envelopes. All daily receipts were deposited in the bank. The money deposited and the money contained in the envelopes corresponded exactly with the amount that the manager of the hotel had collected except for the period from April 26 to and including May 6, 1945. The receipts and collections for this period amounted to $1,889.02. These were never deposited in the bank. The manager disappeared about May 8, 1945, and has not been seen or heard from since. The manager was the only one who had a key to the safe. It was necessary to have the safe broken open and when this was done on May 9, 1945, nothing

was found. The shortage consisted of $1,889.02, belonging to plaintiffs, and $925 belonging to a guest. The foregoing evidence amply supports the finding that the loss occurred during the period that defendant's fidelity bond was in effect. (See cases collected in 16 A.L.R. 1493, 1494, and 56 A.L.R. 967, 968.) ▉ There is other evidence from which the trial court could have reached a different conclusion. Resolution of the conflict was for that court.

The evidence clearly establishes the loss of $925, belonging to a guest of the hotel, which was in the custody of the manager of the hotel for safekeeping. We do not understand that defendant questions the sufficiency of the evidence to establish this loss or that it occurred during the time the bond was in effect. Its point appears to be that because plaintiffs had not paid the amount of the loss to the guest plaintiffs may not recover. The record shows that the guest had sued plaintiffs for $925, and that the suit was pending at the time of the filing of the complaint. The evidence does not establish that the plaintiffs had paid the guest the $925, at the time of trial. The guest was a party defendant. He filed an answer praying for judgment against plaintiffs. The judgment adjudges that the guest recover the sum of $925 against the plaintiffs and that upon payment thereof the guest be enjoined from prosecuting his pending action against the plaintiffs for that sum. There is no appeal by plaintiffs or the guest. The question is whether plaintiffs may recover for this loss without having paid the guest. The dispute is as to whether the contract indemnifies against loss only or whether it also indemnifies against liability. Defendant contends that it indemnifies against loss only. Plaintiffs contend that it indemnifies against loss and liability. ▉ The learned trial judge construed the contract as indemnifying against loss and liability. We agree with that construction.

The contract indemnifies plaintiffs "against any loss of money . . . belonging to the Insured, or in which the Insured has a pecuniary interest, or for which the Insured is legally liable, or held by the Insured in any capacity whether the Insured is legally liable therefor or not, which the Insured shall sustain . . ." It is a contract of indemnity. (Civ. Code, § 2772.) ▉ There are two classes of contracts of indemnity. In one class the indemnitor engages to save the indemnitee from loss, meaning actual loss. In the other class the indemnitor engages to save the indemnitee from

liability. In the first class the indemnitee must prove loss actually suffered by him. ▉ In a case of a loss by the indemnitee of money held as bailee the indemnitor's liability for the loss does not arise until the debt has been paid and the indemnitee has thus suffered a loss. (Civ. Code, § 2778, subd. 2; *Ohio Electric Car Co.* v. *Le Sage,* 182 Cal. 450, 454 [188 P. 982]; *Fernandez* v. *Tormey,* 121 Cal. 515, 518 [53 P. 1119]; *Willson* v. *McEvoy,* 25 Cal. 169, 172; *Globe Indemnity Co.* v. *Larkin,* 62 Cal.App.2d 891, 893 [145 P.2d 633]; *Weaver* v. *Grunbaum,* 31 Cal.App.2d 42, 50 [87 P.2d 406]; *Ramey* v. *Hopkins,* 138 Cal.App. 685, 689 [33 P.2d 443]; 27 Am.Jur. §§ 20, 21, p. 469; 42 C.J.S. § 2, p. 565; § 14, p. 589; 3 Ann.Cas. 480; 24 Cal.L.Rev. 193, 198.) ▉ In the second class the indemnitee need not prove actual loss but only that he has become liable. The indemnitee may, without having paid anything, recover from the indemnitor as soon as liability is legally imposed. (Civ. Code, § 2778, subd. 1; *Eva* v. *Andersen,* 166 Cal. 420, 423 [137 P. 16]; *Showers* v. *Wadsworth,* 81 Cal. 270, 272 [22 P. 663]; *Tunstead* v. *Nixdorf,* 80 Cal. 647, 651 [22 P. 472]; *McBeth & Compton* v. *McIntyre,* 57 Cal. 49, 50; 27 Am.Jur. § 22, p. 470; 42 C.J.S. § 2, p. 565; § 14, p. 589; 74 A.L.R. 284; 3 Ann.Cas. 480, 481; 24 Cal.L.Rev. 193, 194; cf., *Meyer* v. *Parsons,* 129 Cal. 653, 656 [62 P. 216].)

▉ The same instrument may indemnify against actual loss and against liability. (27 Am.Jur. § 20, p. 469; cf., *Oaks* v. *Scheifferly,* 74 Cal. 478; *Globe Indemnity Co.* v. *Larkin,* 62 Cal.App.2d 891, 893 [145 P.2d 633].) ▉ Liability is established upon the rendition of a judgment against the indemnitee with respect to the thing indemnified although the judgment remains unpaid. (*Tunstead* v. *Nixdorf, supra,* p. 651; *McBeth & Compton* v. *McIntyre, supra,* p. 50; *Thomas* v. *Layer,* 48 Cal.App. 199, 202 [191 P. 949]; 27 Am.Jur. § 22, p. 471; 42 C.J.S. § 14, p. 588.) The form which the litigation takes is of no importance so long as the liability of the indemnitee is established. (See, comment of author of annot. in 38 A.L.R. 566, 571; 24 Cal.L.Rev. 193, 196; cf., *Ecuyer* v. *Benevolent Ass'n of Elks,* 152 La. 73, 74 [92 So. 739, 741]; *Gregg* v. *City of Wilmington,* 155 N.C. 18 [70 S.E. 1070, 1075].) ▉ If the contract binds the indemnitor to pay money and the payment of the money will prevent harm or injury to the indemnitee it is a contract of indemnity against a liability. (42 C.J.S., § 2, p. 565.) ▉ Any obscurity in the

language of the contract is to be construed against the party causing the obscurity to exist—in this case the indemnitor. (Civ. Code, § 1654; 31 C.J. § 18, p. 427, and cases cited.) ▮ The contract is to be liberally construed in favor of the indemnitee (*Union Electric Co.* v. *Lovell Livestock Co.*, 101 Mont. 450 [54 P.2d 112, 115]), all fair doubts are to be resolved in favor of the indemnitee (*Eureka Coal Co.* v. *Louisville & N. R. R. Co.*, 219 Ala. 286 [122 So. 169, 171]), and a construction permitting recovery is favored (*Massachusetts Bonding & Ins. Co.* v. *Texas Finance Corp.* (Tex. Civ.App.), 258 S.W. 250, 252), but the undertaking of the indemnitor may not be extended by construction or implication beyond the terms of the contract. (*Ohio Electric Car Co.* v. *Le Sage*, 182 Cal. 450, 454 [188 P. 982]; 42 C.J.S. § 8, p. 576.)

▮ Defendant, by the contract in the present case, agrees to indemnify plaintiffs for any loss of money which they shall sustain and for which they are legally liable. Plaintiffs lost the money and they are legally liable therefor. If this is not the correct construction of the contract, the clause "or for which the Insured is legally liable" is meaningless and surplusage. This is so because the indemnity against "any loss of money . . . belonging to the Insured" covers a loss which the insured sustains resulting from the payment of money to one to whom the insured is legally liable. A contract indemnifying another "against loss, damage, or expense which he may sustain 'or become liable for' in consequence of a certain act," is an agreement to indemnify against liability as well as against actual loss. (*Illinois Surety Co.* v. *Maguire*, 150 Wis. 544 [137 N.W. 782], where the court said: "To hold otherwise would be to eliminate the words 'or become liable for' from the contract. This cannot be done. The words are apt and unmistakable. They are not controlled by any other provisions of the contract, and must receive their natural meaning"; *Stone* v. *Inter-State Exchange*, 200 Wis. 585 [229 N.W. 26, 27], where a clause indemnifying "against money loss by reason of his legal liability to others for bodily injuries accidentally sustained . . ." was held indemnity against liability; *Burling* v. *Schroeder Hotel Co.*, 238 Wis. 17 [298 N.W. 207, 209, 213]; *Elliott* v. *Indemnity Ins. Co. of North America*, 201 Wis. 445 [230 N.W. 87]; *Maxwell* v. *Stack*, 246 Wis. 487 [17 N.W.2d 603, 604, 608].) ▮ The indemnity being against liability, defendant became liable to plaintiffs

for the loss of the money of the guest upon determination of plaintiffs' liability to the guest by the judgment in the present case.

Judgment affirmed.

Shinn, P. J., and Wood, J., concurred.

A petition for a rehearing was denied December 17, 1948, and appellant's petition for a hearing by the Supreme Court was denied January 27, 1949.