# CHARLESTON.

ELIZABETH BELL *v.* HUNTINGTON DEVELOPMENT & GAS COMPANY

(No. 6175)

Submitted September 25, 1928. Decided October 9, 1928.

156

*B. J. Pettigrew, W. C. W. Renshaw and J. H. Meek,* and *Harold A. Ritz,* for plaintiff in error.

*L. R. Via* and *J. P. Douglass,* for defendant in error.

MAXWELL, JUDGE:

As the result of a natural gas explosion at her home in the City of Huntington, June 15, 1926, the plaintiff suffered serious bodily injury. Some months later she instituted this action for damages against the corporate defendant, which was the public utility furnishing gas to plaintiff's home at the time of the accident, and against Charles Carroll and Clure Phillips, employees of the utility, who had done some repair work for the company on the gas meter in the home a few hours before the accident.

At the trial, on plaintiff's motion, the suit was dismissed as to defendant Phillips, because he was not served with process and because he was an infant.

Although a plea of not guilty was entered on behalf of all the defendants, and issue joined thereon, the jury was examined on its *voir dire* only as to the plaintiff and the corporate defendant. The jury was then sworn to try the issue between the plaintiff and the said defendant. The individual defendants were omitted in both the *voir dire* examination and the oath to try the issue. The trial proceeded as though there was but one defendant, and at the conclusion of the testimony, the instructions which were read to the jury were so phrased as to indicate that there was but one defendant. The jury, after due deliberation, returned a verdict against the company for $7,000.00, whereupon one of counsel for the plaintiff, at the bar of the court, and before the verdict had been received by the court or the jury discharged, amended the verdict so that it would show the jury's findings to be against Carroll as well as the company. The foreman then stated to the court that the jury did not intend to find a verdict against Carroll, and thereupon the court instructed the jury that it would have to make a finding as to both the company and Carroll, and sent it back to its room to further consider of its verdict. Later the jury returned a verdict against the company for the sum aforesaid, and found for defendant Carroll. The court overruled a motion of the company to enter judgment for it *non obstante veredicto*, likewise a motion to set aside the verdict and award a new trial, and rendered judgment against the company for the amount of the

verdict. The company prosecutes this writ of error to the judgment of the court. It concedes that the amount of the verdict is not excessive compensation for the injury sustained by the plaintiff, but it denies that it was in any wise responsible for the accident which caused the injury.

Among other assigned errors, it is said the court erred (1) in swearing the jury to try the issue between the plaintiff and the corporate defendant alone, when the only issue in the case was between the plaintiff and the several defendants, and (2) because the court, on a joint issue, rendered judgment against the company only.

Down to the verdict the whole case was tried as though there was but one defendant. Neither on the *voir dire* nor in the swearing of the jury to try the issue was any objection raised by anybody to the procedure being followed. The court's attention was not directed to the situation by counsel nor was any exception to the court's action saved on the record. Of course the jury ought to have been qualified as to all of the parties, and should have been sworn to try the issue joined between the plaintiff and the several defendants, there being a joint plea; but the plaintiff and the complaining defendant having acquiesced in what was done, the point cannot now be raised here. It is to be noted that even on the motion to set aside the verdict, this point was not specifically raised. It is a well settled and most wholesome rule that this Court will not consider alleged errors, outside the pleadings, which were not brought to the attention of the trial court. *Town of Oceana* v. *Cook*, 63 W. Va. 296; *Milling Co.* v. *Milling Co.*, 78 W. Va. 314; *State* v. *John*, 103 W. Va. 148; *Oil Service Co.* v. *Surety Co.*, 105 W. Va. 130. More than forty years ago the rule was laid down by this Court that objections made here for the first time will not be regarded in any matter of which the trial court had jurisdiction, and where the alleged error might have been remedied there if timely objection had been made. *Winans* v. *Winans*, 22 W. Va. 678. An assignment of error, that the verdict is contrary to the law and the evidence, relied on in support of a motion to set aside the verdict and award a new trial, as in this case, will not alone suffice to bring up on writ of error supposed er-

roneous rulings in the course of a jury trial. *Danks* v. *Rodeheaver,* 26 W. Va. 274; *Chadister* v. *B. & O. R. R. Co.,* 62 W. Va. 566; *Milling Co.* v. *Milling Co., supra; Roberts* v. *Lykins,* 102 W. Va. 409.

The plaintiff and the corporate defendant not only having acquiesced, but having actively participated, in the trial as though the issue were between them only, the verdict should have been on that basis. Therefore, so much of the verdict, received by the court, which found for the defendant Carroll is surplusage and to be treated as such. Surplusage does not affect a general finding. *Coal & Coke Co.* v. *Fuel Co.,* 98 W. Va. 374; *State* v. *McCoy,* 95 W. Va. 274; *Martin* v. *Ohio River R. R. Co.,* 37 W. Va. 349; *Harvey* v. *Commonwealth,* 23 Gratt. 941. By the same reasoning it follows that the trial court did not err in overruling the company's motion for judgment *non obstante veredicto,* which motion was predicated on the theory that the finding in favor of the company's co-defendant, Carroll, agent and employee of the company, was a necessary exculpation of the company. Nor would the court have erred in entering judgment on the verdict against the company if the trial, other than in the matters above considered, had supported the verdict.

More serious matters remain. The essential facts must be considered. On receipt of a gas bill early in February or March, 1926, the plaintiff, deeming the amount excessive, went immediately to the office of the defendant company and complained about it, telling the party with whom she talked that "there was bound to be something wrong with the meter". A representative of the company inspected the meter a few days later and told Mrs. Bell that the meter was all right. Upon the occasions of subsequent payment of monthly bills she made similar complaints. These complaints had to do with the amounts of the bills, and did not involve a charge that gas was escaping into the house or that the odor of gas was noticeable. A short time prior to June 15, 1926, inspectors of the gas company discovered a small leak in one of the meter connections in the Bell home. This house was of concrete block construction and consisted of two stories, except that the kitchen part, at the rear, was one story. About

three o'clock in the afternoon of June 15th, defendants Carroll and Phillips, employees of the company, bearing a complaint slip that had been made out by the inspectors, went to the Bell residence to make necessary repairs; Mrs. Bell and her daughter-in-law were just about ready to leave the home to attend to some matters in the city, and after some conversation with the workmen, they departed, leaving in the house with the workmen, Fred Bell, son of the plaintiff, and husband of the younger woman. At the request of Carroll, Fred undertook to see that all openings for fires and lights were closed. After a second tour of inspection by Fred and a closing of all keys or cocks, the hands on the meter ceased to move, thus disclosing that no gas was passing through the meter. The service line came into the property from the company's distribution line in the alley at the rear of the lot, and extended under the house, from the rear, to a point where it was carried up from the ground to the meter, which was located in a closet under the stairs in the dining room which adjoined the kitchen. The only exposed pipes in the house, except at openings for fires or lights, were for a few inches on each side of the meter. The meter and its immediate connections were the property of the defendant and under its control; the rest of the gas plumbing was not owned by the defendant but belonged with the property. By use of a soap and water test Carroll and Phillips ascertained that there was a small leak in a nipple on the intake side of the meter, between the cut-off and the meter. This cut-off was then closed, the meter taken down, the nipple removed and a new one inserted, the meter re-set and all connections made tight. The gas was then turned on, and the tests which were again applied did not disclose any leaks. Carroll and Phillips then left the property, probably about four o'clock. The testimony of these men covering the points just recited is not contradicted.

J. W. Bell, husband of the plaintiff, returned to the house just before six o'clock. Mrs. Bell and her daughter-in-law, Catherine, returned a few minutes later. The women immediately busied themselves in preparation of the evening meal. A top burner in the stove was lighted and a vessel of food

was placed thereon. The plaintiff then seated herself in a chair by a window to look over a section of newspaper she picked up from the floor. In the meantime J. W. Bell, who had gone upstairs, smelled gas and started to see if he could find a leak. He first examined with a lighted match the connections to a little heater in the upstairs front room, and finding nothing wrong there, he made a similar test in the bath room with like result. He then struck a match to a jet in the rear room upstairs, next to where the kitchen flue came up. The explosion followed instantly. This was within a few seconds after Mrs. Bell had seated herself with the newspaper in the kitchen. Mrs. Bell was thrown violently upward and rendered unconscious. Both her lower limbs were broken, and she was otherwise injured. The violence of the explosion so seriously injured the house that it was not repaired but was razed soon thereafter. The rear wall upstairs where Mr. Bell was standing was blown out. The kitchen floor was badly broken and bulged upward; the kitchen roof was blown nearly off; floors and walls throughout the house were more or less injured; at least one door was blown off its hinges.

From what leak or opening came the gas which caused this explosion? Did it come from the meter and its connections, or did it come from hidden pipes in the house or the service pipe under the house? The evidence does not disclose. Nor does it reveal any casual connection between the work of Carroll and Phillips and the explosion which occurred in less than three hours after their departure from the house. They say they left the meter and its connections in good condition, and there is nothing to indicate to the contrary. This action is based on a charge of negligence, and the ordinary rules governing the proof of negligence obtain here. Wherein lies any act of omission or commission on the part of the gas company, or its employees, which brought about or contributed to this unfortunate accident? We are not pointed thereto, except the plaintiff says that the company having received notice that gas was leaking in the house did not use due and reasonable diligence either to repair the leak or cut the gas off from the house, and it is said that whether or not such

diligence was used is a jury question. Such is, in fact, a proper matter for jury consideration if there be evidence tending to show that the gas company knew or ought to have known that there was a gas leak in the house. It will be remembered that Mrs. Bell's complaints to the company were prompted by the size of the monthly bills and went to the meter readings. It does not appear from the evidence that she made any complaint about the presence of gas fumes in the house. The evidence is not clear as to the date of the inspection following which the complaint slip was issued which Carroll and Phillips had with them when they went to the Bell home to repair the meter connections, June 15th, but, in our opinion, the plaintiff is not warranted in the deduction that this slip was issued at the time the meter was inspected soon after Mrs. Bell's original complaint about the size of the gas bill in February or March. If this were true,—that the company had discovered a leak in its meter connections in the winter time, and did not send men to repair it until the following June,—negligence in that particular would be apparent. A charge of negligence, however, can not be supported by supposition or conjecture. It must be proven. And again, if it were in fact proven that the company was negligent in the particular just noted, its liability for the explosion would not follow unless it further appeared that the gas which caused the explosion escaped from the faulty meter connection and not from a leak in a pipe, under control of the customer, in some other part of the house, and whereof the company had no notice.

It must be remembered that with the exception of the meter and its immediate connections all of the gas plumbing was under the control of the customer who was responsible for the condition thereof. Of course, if employees of the company had information that gas was leaking in the house, repairs should have been made or the gas cut off, if liability for negligence would be avoided; but we do not have proof of either the leak or the notice, save only in the meter connection already discussed.

There is some conflict in the testimony, particularly with reference to the extent and nature of the damage to certain

parts of the house, and as to the conversation between Mrs. Bell and Carroll and Phillips when they first came to the house the afternoon of June the fifteenth, but these matters are not vital to the issue.

It does not follow from the fact of a natural gas explosion in a building that the utility furnishing the gas has been negligent and is therefore liable for the injury. If the explosion comes from gas that has escaped from the pipes, it must be shown either directly or circumstantially wherein the company is at fault. "Generally speaking, a gas company which does not install the pipes in a customer's building, and which has no control over them, is in no way responsible for the condition in which they are maintained, and consequently is not liable for injuries caused by a leak therein of which it has no knowledge. One who applies for gas has the duty to see that his own pipes, through which the gas is to be used, are in good order, and no general obligation on the part of the company can be inferred to inspect such pipes. But if the company knows at the time it turns on the gas, or after turning on the gas becomes aware, that there are defects in the pipes, it then becomes its duty to make a proper inspection to ascertain the safety of the pipes before it furnishes, or continues to furnish, gas through them." 12 R. C. L., page 909. This is a clear statement of the law and is well supported by the cases.

Principles applicable here were recognized and followed in the late case of *Laurent* v. *United Fuel Gas Co.*, 101 W. Va. 499. It, too, was a gas explosion case. It was there held that the doctrine of *res ipsa loquitur* is not applicable where there is divided responsibility and the unexplained· accident may have been the result of causes over which the defendant had no control, and further, that the burden rests on the plaintiff to show negligence on the part of the defendant which caused the injury. This is but the application of common sense to gas explosions.

Neither the trial court nor this court should interfere with a jury verdict which rests on sufficient evidence, whether the evidence be disputed or not, if there be no prejudicial error in the pleadings or procedure. Where, however, there is lack

of certainty or sufficiency in the evidence, the duty of the court to set aside the verdict and award a new trial is manifest. ''In a case where all the evidence introduced on the trial is clearly insufficient to warrant a verdict in favor of the plaintiff, and the jury nevertheless finds a verdict in favor of the plaintiff, it will be error to overrule the motion of the defendant to set the same aside and grant him a new trial.'' *Wandling* v. *Straw*, 25 W. Va. 692; *Hatfield* v. *Workman*, 35 W. Va. 578.

The evidence in this case not being sufficient to warrant a rational deduction as to where the gas came from that caused the explosion, or to point out in what particular the gas company was negligent in omission or commission, we reverse the judgment, set aside the verdict and award a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*