GEORGE FISHER GROFF, JR., *etc.* v. CHARLESTON-DUNBAR NATURAL GAS COMPANY

(No. 6885)

Submitted January 28, 1931.     Decided February 3, 1931.

*Payne, Minor & Bouchelle* and *A. M. Belcher,* for plaintiff in error.

*Harold A. Ritz, Rummel, Blagg & Stone,* and *B. J. Pettigrew,* for defendant in error.

HATCHER, JUDGE:

Plaintiff was severely injured on March 26, 1929, by a gas explosion within his father's home. The gas was furnished by the defendant. The plaintiff sued to recover damages, and the jury found in favor of the defendant.

The Groff house is on a lot in the Kanawha Terrace Addition. It is across the public road from a gas main of the defendant. In 1923, the owners of the addition were given permission by defendant to tap this main in order that gas might be brought to consumers within the addition. They constructed a line as follows: A two-inch pipe runs from the main under the road to near the property line of the addition; the pipe then comes to the surface and turns at a right angle for about four feet, upon which a regulator is installed from the end of this exposed four feet, a three-inch pipe extends at a right angle, underground, up a hill for approximately 125 feet. The joint connecting the exposed four feet with the three-inch pipe is a "swinging joint" to take care of any play in the line. The grade of the hill is about 22½ degrees. The Groff house was built on this hill about 1924, and was supplied with gas by a 1¼ inch "service" pipe. This pipe tapped the three-inch line with a rigid connection about 18 inches under ground at a point 85 feet from the regulator. The three-inch line at this point was three feet from the house wall under which the service pipe entered the cellar. The line from the defendant's main into the addition was constructed after advising with, and under the inspection of, the defendant. There was no meter on this line. It remained the property of the owners of the addition, but was used by defendant to transmit gas directly to the Groff house in which defendant maintained a meter. The soil on the hillside in the vicinity of the house is loose, unstable and inclined to slip. A slip had occurred and piles had been driven along the foot of the hill even before the gas line was constructed. Since then a retaining wall has been built along the front of the Groff lot, and also in front of, and within a few inches of, the regulator. A slip in the Groff terrace was easily visible at the time of the explosion. The soil along the 3 inch line was overgrown with weeds and underbrush.

On the morning of March 26th, employees of the defendant repaired a leak in the regulator. While at this work they broke the core of the regulator, and in order to replace it, sawed the exposed two-inch pipe in two, afterwards reuniting it with a "dresser coupling." They finished their work between noon and one P. M., when they applied the soapsuds test and found no leaks on the exposed two-inch line. The gas in the house had been cut entirely off during the work. After the repairing was finished, the gas was turned on in the stove as a test. It burned strongly and was soon turned off. The day was warm, the doors and windows were kept open, and no fire was required for any purpose until five P. M. when the gas was burned just long enough to make coffee, the family eating a supper otherwise cold. The doors and windows were closed shortly after six P. M. There is evidence that the gas was not turned on again. About eleven P. M. a cigarette lighter was ignited in the kitchen, and a terrific explosion followed, demolishing the house and injuring the plaintiff, as well as all others in the house.

The regulator was closed shortly after the explosion. Employees of defendant cut the service pipe in the basement of the house the next morning. They applied a pressure pump to the part of that pipe leading to the meter, and no leak was disclosed. The pump was then applied to the section of the pipe connecting with the three-inch line and no pressure was recorded, showing that there was a leak between the pump and the regulator. They followed the course of the three-inch line up the hill from the regulator by gouging into the soil with an ordinary iron bar (showing the loose condition of the soil). They dug down to the pipe at several places along the line but found no leak. However, at the exact point of its connection with the service pipe they found a crack on the lower side of the latter from an eighth to a fourth inch wide and about an inch in length. There was a sewer line running from the house within a few inches of this crack, and the evidence shows that gas escaping there could have gotten into the house through or along this sewer or along the service pipe. No other breach in the pipes was found.

It does not appear from the evidence whether this break

was old or recent. If old (which is unlikely) it presumably was produced by a downward movement of the three-inch pipe. If recent it could have been caused by such a movement or by the explosion. If by such a movement, either the work on the regulator or a general slip or subsidence of the hillside soil was responsible. If by the explosion, there should have been indications at or near the break that the service pipe had been forced up hill. If there were no such indications (and there is testimony that there were none), and the pipe remained rigid even after the explosion, these facts would point to a slip of the three-inch line.

It is the theory of the defendant, as expressed in the instructions given in its behalf, particularly Nos. 5 and 12, that it is not liable unless it was under express contract to maintain the line running to the Groff property from its main, or that its workmen had actual knowledge of the break in the service pipe. Neither of these theories correctly states the defendant's liability. As well contend that defendant would not be liable had it delivered gas in drums not its own to the Groff house, and an injury to plaintiff had resulted from defendant's negligent use of the drums. The fact that the owners of the addition had not sold or leased the line to defendant is not significant in determining its duty. The test in such cases is *use*, not ownership. The defendant had the exclusive use of the line for delivering gas to the Groff house. For the purpose of this delivery it made the line *its own*. Defendant relies strongly upon a letter which it wrote to John Walder, one of the owners of the addition, in 1923, which contained the following provision: ''It is to be expressly understood that if you install lines to this addition, that the line running to the same, from our main line shall be and remain your property.'' That letter might have some bearing if Walder had been the agent of Mr. Groff, but Mr. Groff dealt directly with the defendant, and is not shown even to have known of the letter. The defendant transmitted its gas through the addition line with the consent of the addition owners. Use of the line under that consent gave the defendant full possession of the line. It could not thus appropriate the line and be rid of care for it. Responsibility is inseparable

from the transmission of gas. Proper concern for humanity and property binds a gas company in delivering gas, "to that degree of care which the nature of the article it deals in, and the consequences to be apprehended from an accident, reasonably call for." *Schmeer* v. *Gaslight Co.*, 147 N. Y. 529, 30 L. R. A. 653, 657-8. Therefore, the defendant became subject to the duty and burden of reasonable inspection and supervision over the addition line in order to prevent any slips which might endanger the line or its connections. *Canfield* v. *Gas Co.*, 80 W. Va. 731, 735; *Castner* v. *Fuel Co.*, 123 Wash. 236, 212 Pac. 283 (on rehearing 126 Wash. 657, 219 Pac. 12); *Reid* v. *Lighting Co.*, 196 N. Y. Supp. 471; *Hayes* v. *Gaslight Co.*, 179 N. Y. Supp. 312, 313; *Chisholm* v. *Gas Co.*, 57 Ga. 28, 31. These cases are cited, not as having facts identical with the one at bar, but as illustrating the care imposed on gas companies where they have used piping not their own for the storage or transmission of gas. "Care and prudence required of the defendant watchfulness and vigilance commensurate with the dangerous character of the substance it was distributing, and this involves not only the careful laying of sound pipes, but also requires an efficient system of inspection, oversight and superintendence." *Siebrecht* v. *Gas Co.*, 47 N. Y. S. 261, 263. Our own Court has expressed this duty just as strongly in *Canfield* v. *Gas Co., supra,* p. 736. See also *Koelsch* v. *The Philadelphia Co.*, 152 Pa. 355 (a leading case); Cooley on Torts (3rd Ed.), 1497-8; 28 C. J., subject Gas, sec. 57; 12 R. C. L., subject Gas, sec. 47; Thornton's Law of Oil and Gas (4th Ed.); secs. 692 and 702; 25 A. L. R. annotation p. 267. The defendant's conduct prior to this litigation is not at all consistent with its position now. It did not report the leak in the regulator to the addition owners, but repaired the leak itself. Following the explosion, it uncovered a considerable part of the addition line, disconnected the regulator and disconnected and carried away the section of pipe, with its fittings, which connected the regulator with the three-inch piping. These acts of defendant *then,* were not acts of indifference to conditions affecting the line but were acts demonstrating both the care for and the control of the line which it *now* would repudiate.

The defendant cites *Helm* v. *Heat Co.*, 86 W. Va. 628, *Bell* v. *Development Co.*, 106 W. Va. 155, and other cases as exonerating it entirely from any duty to inspect or repair the service pipe and as exculpating it from liability for the consequences of the leak in the pipe if without actual notice of the leak. It may be that the defendant was not primarily responsible for the security of the service pipe. But defendant was obligated (by reason of the use) to keep the three-inch line in place, and to prevent it from breaking the service pipe by its dislocation. This is the application to the instant case of the very principle stated in the *Helm* case at the bottom of page 634. In that case there was a displacement in the service pipe, but there all similarity to this case ends, as that displacement was not ·chargeable to any act or omission of the Heat Company. The cause of the explosion in the *Bell* case was entirely a matter of conjecture, and could not be associated with any act of the Development Company. The facts in all the other cases cited by defendant are so materially variant from the facts here that those cases would not even tend to exonerate the defendant if it should appear that the three-inch line (through instable support) imperiled the service pipe, and the exercise of reasonable care by defendant should have discovered that peril. ''The question of the defendant's liability is not dependent upon their knowledge of the pipe's defective condition or the escaping gas, but upon the observance or neglect of care by them.'' *Dow* v. *Gas Co.*, 69 N. H. 312, 315. · 28 C. J. supra, sec. 58.

Defendant reminds us that this Court has held that a gas company in the business of defendant is not an insurer of the consumer, and that the bare fact of a gas explosion in a consumer's house does not warrant the application of the rule of *res ipsa loquitur* against the company. We have also held, however, that the application of this rule depends upon the facts and circumstances of each case. *Marshall Co.* v. *Gas Co.*, 63 W. Va. 202. And we have never held that such an explosion closely following work on a gas line, in the immediate vicinity of the house, when the work was under the exclusive control of the company, would not call on the company for an account of its supervision if the consumer and

his household are shown to be without fault. See generally *Jankey* v. *Gas Co.,* 98 W. Va. 412, 417. 28 C. J., *supra,* sec. 69.

If the evidence warrants the view that the service line was broken by a slip of the three-inch line, then the question is the same, whether the slip resulted from the work done on the regulator or from the looseness of the soil. That question is, what care was exercised by defendant to anticipate and prevent the slip? *Devlin* v. *Light Co.,* 198 Pa. 583, 585, *Jankey* v. *Gas Co., supra,* 418. Did it make reasonable inspection of the line? If so, would the slip or the tendency to slip with its consequent menace to the service pipe have been discovered? If the defendant had notice of, or by the exercise of reasonable care it should have noticed the instability of the hillside soil, it became its duty to support the three-inch line properly against that danger. *Butcher* v. *Gas Co.,* 12 R. I. 149; *Thompson* v. *Gas Light Co.,* 201 Mass 77, 80. It has been held that "every precaution which is within the bounds of reason" should be taken to guard against a misplacement of gas pipes. *Heh* v. *Gas Co.,* 201 Pa. 443. Other authorities have said "every reasonable precaution suggested by experience and the known danger of the escape of gas ought to be taken." 28 C. J. *supra,* sec. 56; 12 R. C. L. *supra,* sec. 46; Thornton, *supra,* sec. 679.

Because of the failure of the court to instruct in accordance with the principles announced herein, the judgment is reversed and the plaintiff awarded a new trial.

*Reversed; new trial awarded.*