JOSEPH A. STENGER AND ANNA M. STENGER

*v.*

HOPE NATURAL GAS COMPANY

(No. 10608)

Submitted January 26, 1954.  Decided March 23, 1954.

550

*William E. Glasscock, Howard F. Meek,* for plaintiff in error.

*Charles S. Armistead, John D. Downes,* for defendants in error.

GIVEN, PRESIDENT:

Plaintiffs, Joseph A. Stenger and his wife, Anna M. Stenger, instituted their action in the Circuit Court of

Monongalia County against the defendant, Hope Natural Gas Company, for damages resulting from an explosion, followed by fire, to a dwelling house, and furniture contained therein, owned and occupied by plaintiffs. A verdict was returned for plaintiffs in the amount of $19,802.00, and judgment in that amount was entered on the verdict. The action is here on writ of error granted pursuant to the petition of defendant.

The dwelling mentioned was situated at 175 Fayette Street in the City of Morgantown, and the explosion and fire occurred shortly after eleven o'clock on Sunday morning, January 27, 1952. On that morning it had been raining and water was standing in low or sunken places in the street. The dwelling was of frame construction, two stories, with basement. It contained three rooms and large hall on the first floor, three rooms and bath on the second floor, and one finished room in the attic. There was also an inclosed sun porch situated at the southeast corner of the dwelling, but the basement did not extend under the sun porch. The front of the dwelling was approximately eight feet from Fayette Street. On the lot owned by plaintiffs, upon which the dwelling was situated, immediately west of the dwelling, was a building containing a storeroom and apartments. Immediately east of the dwelling was a building containing a storeroom and a tailoring shop. The immediate vicinity of the location of plaintiffs' property may be described generally as a business area.

There were two open gas burning fireplaces on the first floor of the dwelling and two on the second floor. Apparently no fire was burning in any of them immediately prior to the explosion. A gas burning stove for cooking, on the first floor, was used by Mrs. Stenger on the morning of the explosion, but all flames had been extinguished therefrom except the pilot lights, which burned continuously. An instantaneous water heater, equipped with a gas pilot light, which also burned continuously, was maintained in the basement. In the basement also was a coal burning furnace, in which there was fire immediately before the explosion. All natural gas used in the dwelling

was furnished by defendant, a public utility company. For the purpose of this opinion we may consider the explosion as having resulted from escaping gas, though that fact is not definitely established.

The gas lines of defendant were located beneath the pavement of Fayette Street. Situated in front of the dwelling of plaintiffs, three or four feet from the property line, was a gate valve inclosed in a "gate box" with a "lid that doesn't fit very tight". Gas from defendant's line flowed through the gate valve and a regulator to the meter which measured the gas delivered to plaintiffs, located in the front part of the basement of the dwelling damaged by the explosion.

At the time of the explosion plaintiffs owned and operated a newsstand located a short distance from the residence. In the early morning of the day of the explosion Mr. Stenger went to the place of business. Sometime before nine o'clock Mrs. Stenger also went to the place of business. Both appear to have revisited the dwelling before eleven o'clock, and Mrs. Stenger last left the residence at about eleven o'clock. At no time on that morning did either of plaintiffs observe any odor of gas in the residence. Shortly after eleven o'clock Mr. Stenger again returned to the residence and, as he was about to enter the sun porch, the explosion occurred. He was caught in the falling debris, but was released without serious injury, and assisted the firemen, who arrived a few minutes later, in entry of the dwelling.

Upon entry of the dwelling by the firemen, a small fire, which could have been extinguished with "two or three buckets of water", was found burning in the ceiling of the basement, near the foot of the stairway. A small fire was burning on the dining room table on the first floor, and a fire was burning under the sun porch. Witnesses differed in opinion as to whether the explosion occurred in the basement or on the first floor of the dwelling. Plaintiffs contend that the effect of the explosion was such as to completely destroy the dwelling, except as to salvage

value, by bulging or displacing the sidewalls thereof. Some of the furniture in the dwelling at the time was completely destroyed, and other furniture was damaged.

Inasmuch as one of the vigorously contested questions relates to the sufficiency of the evidence to establish negligence on the part of defendant, and the sufficiency of the evidence to establish causal connection between any negligence and the damage, we must attempt to state such evidence in detail. It may be helpful, in appraising such evidence, to here point out that plaintiffs offered no direct evidence tending to show that gas from any definite source or leak in defendant's lines or fixtures followed any definite course or channel into the dwelling damaged.

Several witnesses testified to the effect that on numerous occasions, within a period of approximately two years immediately prior to the explosion, strong odors of gas were present along Fayette Street in the proximity of plaintiffs' property, and that often during rainy weather bubbles were observed arising at certain points where water was standing, especially at the gate valve mentioned above. Such odors and bubbles were noticed by some of the witnesses on the morning of the explosion. Immediately after the explosion the gate valve was discovered to have been broken, and large amounts of gas were then escaping into the air from the break through the box which enclosed the gate valve. As one witness expressed it, the lid of the gate valve box "was even dancing". Defendant contends that the break in the gate valve resulted from the impact or "sudden jar" of the explosion, and offered witnesses who gave expert opinions to the effect that the break could have occurred in that manner. There was also substantial evidence offered by defendant that the break in the gate valve was of recent origin. The gate valve was later tested for leaks, by persons experienced in such matters, with the break completely closed, and found to have small gas leakage amounting to approximately thirty-five one-hundredths of a cubic foot of gas per hour, around the flange joint and

the stem packing. The local manager of defendant company testified to the effect that the company had received no complaint of any gas leaks along Fayette Street near the vicinity of plaintiffs' property.

Immediately after the explosion a fire was observed burning under the sun porch "on the outer edges of the porch", near the entrance to the dwelling, which the firemen believed to be a gas fire and which they did not attempt to extinguish until after the gas had been shut off at the gate valve, for fear that escaping gas might cause another explosion. Upon the closing of the gate valve, the fire went out. The evidence does not definitely show the location of any of defendant's lines within close proximity to the point where the fire was burning. Neither does it show the location of the lines of plaintiffs which serviced the sun porch.

Several weeks after the explosion defendant made certain repairs to its lines along Fayette Street. One of plaintiff's witnesses was permitted to testify that he saw defendant remove part of its line from under Fayette Street, from approximately the middle of the street, somewhat south of High Street, and that "The pipe, of course, was rusty, had rust holes in many places clear to the interior of the pipe". The distance from the dwelling damaged to the place from which the pipe was removed is not established by the evidence.

There is evidence to the effect that in the original construction of defendant's high pressure line under Fayette Street, to which the gate valve was attached, no "expansion joints" were provided to protect against breaks or leaks resulting from contraction or expansion resulting from temperature changes. It is shown by defendant, however, and not disputed, that "expansion joints" were not necessary and that "dresser sleeves" or "dress coupling", actually installed at proper points in defendant's line, would have taken care of any probable contraction or expansion. There is no attempt to show any break or leak

due to the absence of "expansion joints", unless we consider the break in the gate valve to be such.

Some years prior to the explosion there was constructed under Fayette Street, passing along in front of plaintiffs' property, what is commonly referred to as a reinforced concrete box storm sewer, three and one-half feet by five feet, inside measurements, and fourteen or fifteen feet below the surface of the pavement. The evidence tended to show that there had been a general subsidence of the earth along and near the storm sewer and of Fayette Street, and some dropping or subsidence of the sewer itself, within the last five years, and that such subsidence would have a tendency to create pressure or tension on the gas lines of defendant; that "A sufficient pressure or tension will cause something to give, and in the giving, of course, there is a resultant action". There is also evidence that such subsidence had been called to the attention of the predecessor in title of defendant. There is no attempt, however, to prove that any break or leak in defendant's lines, in the proximity of plaintiffs' property, resulted from any such "pressure or tension", except as to the break and leak in the gate valve; or that if such break did occur, gas therefrom would have flowed into the premises of plaintiffs.

In the early afternoon of the day of the explosion certain tests were made to determine whether any gas was present in the basement of the damaged dwelling, in nearby basements and buildings, and in other places in close proximity to the dwelling. These tests were made by a member of the fire department and an employee of defendant, each using an instrument described as an "explosometer". Such an instrument, if gas is present, records a reading from zero to one hundred. One witness was of the opinion that a reading of from sixty to eighty would indicate the presence of an explosive mixture of gas and air, but the evidence of several witnesses, more familiar with the workings of the instrument, was that any reading below one hundred would show the absence of sufficient gas to

create an explosive mixture. To constitute an explosive mixture there must be present not less than five per cent and not more than fourteen per cent of natural gas of the potential B.T.U.'s contained in the gas furnished plaintiffs by defendant. No reading of as much as one hundred was found in the spaces within any of the basements or buildings. Readings of sixty to eighty were found in places like crevices in the walls of basements. No presence of gas was indicated in the Stenger dwelling or in any crevice in the basement floor or walls. Similar tests were made about the time of the trial, in the several buildings and other places, and no presence of gas was then indicated by the explosometer.

In *Agsten & Sons, Inc.* v. *United Fuel Gas Company,* 117 W. Va. 515, 186 S. E. 126, this Court held: "1. In order to sustain a recovery against a utility company engaged in the distribution of natural gas for damages caused by the explosion of natural gas upon the premises of one of its consumers, there must be evidence sufficient to sustain a finding by the jury that the escape of the gas which caused the explosion was due to some negligent act of the defendant or that it escaped from some instrumentality entirely within the control of the defendant." See *Burk* v. *Huntington Development & Gas Company,* 133 W. Va. 817, 58 S. E. 2d 574; *Bell* v. *Huntington Development & Gas Company,* 106 W. Va. 155, 145 S. E. 165; *Laurent* v. *United Fuel Gas Company,* 101 W. Va. 499, 133 S. E. 116; *Canfield* v. *West Virginia Central Gas Company,* 80 W. Va. 731, 93 S. E. 815; *Moore* v. *West Virginia Heat & Light Company,* 65 W. Va. 552, 64 S. E. 721. In *Burk* v. *Huntington Development & Gas Company, supra,* it is held: "4. Where, in an action at law tried before a jury, it clearly appears from all the evidence introduced on the trial, that the verdict of the jury can have been reached only by a resort to conjecture as to the controlling facts in the case, the same should be set aside by the trial court, and a new trial awarded, unless it be a case where it would be proper to render judgment notwithstanding the verdict."

In their contention that the evidence is sufficient to establish negligence on the part of defendant, plaintiffs apparently place great reliance upon the proof relating to escaping gas at or near the gate valve. There undoubtedly was some gas leakage at or near the gate valve, for some considerable time prior to the morning of the explosion, as well as on the morning of the explosion. Plaintiffs did not, however, attempt to show the extent of such leaks or that any gas escaping followed any definite course to their dwelling. In so far as the proof relating to the leakage is concerned, it would appear probable that the gas leaking from the gate valve was escaping into the air, not into plaintiffs' dwelling. While it may have been possible for leaking gas to have traveled through the soil from the gate valve to plaintiffs' basement, to conclude that it did so merely because some gas escaped into the air would be mere speculation. The evidence does warrant the conclusion that after the breaking of the gate valve a much larger amount of gas was escaping into the air, and that this continued until the gate valve was closed. It is not established, however, by direct proof or by necessary inference, that the gate valve was probably broken before the time of the explosion, or that defendant had any notice or knowledge of the break before that time, and defendant's expert opinion evidence of several witnesses to the effect that the gate valve was broken by the impact of the explosion is hardly denied. We do not overlook plaintiffs' contention that the gate valve was negligently installed and maintained, based largely on the failure of defendant to have installed an expansion joint in its line to which the gate valve was attached, to take care of any contraction or expansion of its line, but the evidence on that point appears to be to the effect that an expansion joint was unnecessary, was not called for by proper pipe line construction practices, and that any probable contraction or expansion was provided for by other proper means. There is, moreover, no evidence from which it can be inferred that the break in the gate valve occurred because of any contraction or expansion.

Proof of subsidence of the earth along the storm sewer constructed under Fayette Street, and of the street itself, is pointed out by plaintiffs as a possible cause of the break in the gate valve which created pressure or tension on the line of defendant to which the gate valve was attached. It is argued that the failure of defendant to observe such subsidence and to take necessary measures to prevent such pressure or tension constituted negligence, and that the breaking of the gate valve was a direct result thereof. The most that can be inferred from the proof, however, is that there was considerable subsidence, and that such subsidence could have created pressure or tension on any pipe line within close proximity of the subsidence. It is not contended that any break or leak resulted from such pressure or tension, except that of the gate valve. There is no actual proof that such break was the result of any such pressure or tension. As before noticed, if the cause of that break was not the impact from the explosion, then the cause of the break is mere conjecture.

Plaintiffs also contend that the proof of the removal from Fayette Street of the piece of pipe with "rust holes in many places clear to the interior of the pipe" establishes negligence of defendant from which the damages claimed resulted. We think, however, the proof falls far short. The evidence does not establish from what part of Fayette Street the particular rusty pipe was taken, at what distance from plaintiffs' dwelling, or, in fact, whether leaking gas therefrom did or could have reached plaintiffs' dwelling. Apparently the pipe was removed from under some part of the pavement of Fayette Street. We find no proof of negligence of defendant in failing to suspect or discover the condition of the pipe and in making reasonable inspection of its lines.

Another contention of plaintiffs as to negligence of defendant relates to the explosometer tests made in and about several basements and buildings in the vicinity of the dwelling damaged. We fail to find any possible inference of negligence on the part of defendant arising from

such proof. As noticed in the above detailed statement of facts, such testimony disclosed no explosive mixture within the space of any of the basements or buildings where the tests were made. Some of the tests made within such places or crevices within the walls of the basements indicated a reading of as much as eighty on the exploso-meter, which, according to the views of those most familiar with the instrument used, did not indicate the presence of gas in sufficient quantity to permit an explosion. Admittedly, no gas was found or indicated by the explosometer within the basement of the dwelling damaged. There was, moreover, no attempt by plaintiffs to prove that any gas found on premises adjacent to or near plaintiffs' property flowed directly from the line under control of defendant. Could not such gas have accumulated from the service lines of any one of the adjacent property owners? Is it not mere speculation to say that such gas probably flowed from any definite source?

It is also contended by plaintiffs that proof of the "gas" fire under the sun porch immediately subsequent to the explosion establishes negligence on the part of defendant, arguing that since the fire was a gas fire it must have resulted from leaks in the lines or fixtures of defendant because of negligent installation or maintenance. The proof does not support the contention. We can not assume that the gas which was burning at the sun porch flowed directly from the line or fixtures under the control of defendant, from the lines or fixtures under the control of plaintiffs, or from other property owners' service lines in the near proximity of the sun porch. Though we could make such assumption, negligence of defendant would not necessarily be inferred. Did the leak result from the impact of the explosion, or did it occur sometime before the explosion? Did defendant have, or should it have had, by reasonable inspection, notice of any such leak? We have already indicated that no negligence on the part of defendant in the installation and maintenance of the gate valve was established by the evidence. Plaintiffs attempt

to point out no other break or leak from which the gas burning under the sun porch could have flowed.

In appraising the evidence in this case, we are of the opinion that the facts alleged to constitute negligence on the part of defendant, when considered singly or collectively, are not sufficient to support the finding of negligence necessary to support the verdict returned in favor of plaintiffs. In reaching this conclusion we have not failed to consider the pertinent rules relating to the inferences which should be given to facts proved and to the weight to be accorded to a finding of a jury. The rule requiring this Court to set aside verdicts not supported by evidence is just as important and is just as definitely established as the rules just mentioned. See *Burk* v. *Huntington Development & Gas Company, supra; Agsten & Sons, Inc.* v. *United Fuel Gas Company, supra; Canfield* v. *West Virginia Central Gas Company, supra; Moore* v. *West Virginia Heat & Light Company, supra.* Moreover, if we assume that any of such acts, or all of them combined, established negligence on the part of defendant, yet the proof would not support the verdict for the reason that it is not established that the damage, or the explosion, necessarily or probably resulted from such negligence. In the recent case of *State ex rel. Cox* v. *Sims, Auditor,* 138 W. Va. 482, 77 S. E. 2d 151, this Court held: "4. Negligence to be actionable must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury." A number of cases supporting the holding are therein cited.

Since a second trial of this action may be had upon remand, this Court feels a duty to discuss certain other questions which arise upon the record. One of such questions relates to the measure of damages contended for by plaintiffs. On the trial plaintiffs, over defendant's objections and exceptions, introduced two ordinances of the City of Morgantown. One of the ordinances proscribed fire zones for the city, and it was proved that the dwelling damaged by the explosion was situated within such a zone. The other ordinance prohibited the replacement of any

building within such a zone, where destroyed, or the repair thereof where the damage was greater than fifty per cent of its then value, unless replaced or repaired with fireproof materials. Plaintiffs introduced the ordinances for the purpose of laying the foundation for proof as to the quantum of damages by showing that the costs to plaintiffs in replacing or repairing the dwelling would be much greater because of the requirements of the ordinance as to the use of fireproof materials. There was substantial evidence to the effect that plaintiffs' dwelling was damaged more than fifty percent. Two questions arise as to the admission of the ordinances. Defendant contends that since the declaration contains no allegation relating to the ordinances, they are inadmissible for any purpose; and that it was error to admit them for the specific purpose of establishing the quantum of damages.

We think there is no merit in the first contention. Plaintiffs' cause of action in no sense rests upon or arises out of any violation of the ordinances. Plaintiffs' cause of action arose independently of the ordinances. Their admission was for evidentiary purposes. Parties are not required to plead mere matters of evidence. See *Gasber* v. *Coast Construction Corporation,* 134 W. Va. 576, 60 S. E. 2d 193; *Harman* v. *The New River & Pocahontas Consolidated Coal Company,* 78 W. Va. 63, 88 S. E. 601; *Mahaffey* v. *Rumbarger Lumber Company,* 71 W. Va. 175, 76 S. E. 182; *Snyder* v. *Wheeling Electrical Company,* 43 W. Va. 661, 28 S. E. 733; *Christensen* v. *Hennepin Transportation Company,* 215 Minn. 394, 10 N. W. 2d 406, 147 A.L.R. 945; *Hart* v. *Skeets,* 346 Mo. 1118, 145 S. W. 2d 143; 38 Am. Jur., Negligence, Section 330.

Whether the ordinances were admissible for the purpose of aiding the jury in arriving at the proper quantum of damages presents a more serious problem. As to the measure of damages, this case was tried upon the theory that plaintiffs were entitled to recover only the difference between the fair market value of the dwelling immediately before the explosion and fire and the fair market value immediately after the explosion and fire. The jury was

instructed to that effect. There seems no doubt that the rule is applicable in the instant case. See *Swick v. West Virginia Coal and Coke Company,* 122 W. Va. 151, 7 S. E. 2d 697, wherein the Court quotes from 15 Am. Jur., Damages, Section 109, as follows: "In case of an injury of a permanent nature to real property the proper measure of damages is the diminution in the market value of the property by reason of that injury, or in other words the difference between the value of the land before the injury and its value after the injury." Defendant does not contend for any other rule, but contends that the effect of the ordinances, the requirement that the dwelling be repaired or replaced with fireproof materials, has no place in the consideration of what the fair market value was either before or after the explosion and fire.

In such cases, where property is damaged through the negligence of another, the problem is to determine the actual amount of the loss sustained by plaintiff. *Biederman v. Henderson,* 115 W. Va. 374, 176 S. E. 433; *Bodkin v. Arnold,* 48 W. Va. 108, 35 S. E. 980; *Ogg v. Murdock,* 25 W. Va. 139; 15 Am. Jur., Damages, Section 107. In 25 C.J.S., Damages, Section 71, we find the following statement: "Stated broadly, the measure of compensatory damages is such sum as will compensate the person injured for the loss sustained, with the least burden to the wrongdoer consistent with the idea of fair compensation."

Ordinarily, the actual damage to or destruction of real estate sustained by a plaintiff may be determined with reasonable accuracy by proving the market value thereof immediately before the injury and deducting from the amount of such value whatever the amount of the market value is proved to be of that which remains. Of course, if the property is completely destroyed, the amount of recovery is limited to the market value immediately before the injury. In determining market value as of a definite time, numerous methods of proof are usually available. These can not be definitely defined since, to a very great extent, they depend upon the nature or circumstances of each particular case. For illustration, we may point out

that evidence of purchase price, original construction costs, replacement costs, costs of repairs, the purpose for which the property is most adaptable, utility or lack of utility for the purpose for which used, deterioration, reasonable depreciation, rental value and expert opinions as to fair market value, may usually be received, if pertinent and material to the issues in the particular case being tried. See *Strouds Creek and Muddlety Railroad Company* v. *Herold,* 131 W. Va. 45, 45 S. E. 2d 513; *Monongahela West Penn Public Service Company* v. *Monongahela Development Company,* 101 W. Va. 165, 132 S. E. 380; *Wood* v. *County Court of Wyoming County,* 100 W. Va. 29, 129 S. E. 747; *Monongahela Valley Traction Company* v. *Windom,* 78 W. Va. 390, 88 S. E. 1092; *Baltimore & Ohio Railroad Company* v. *Bonafield's Heirs,* 79 W. Va. 287, 90 S. E. 868; *Gauley & Eastern Railway Company* v. *Conley,* 84 W. Va. 489, 100 S. E. 290, 7 A.L.R. 157; *Moore* v. *Hope Natural Gas Company,* 76 W. Va. 649, 86 S. E. 564; *Wilson* v. *Guyandotte Timber Company,* 70 W. Va. 602, 74 S. E. 870; *Hearn* v. *McDonald,* 69 W. Va. 435, 71 S. E. 568; *Pickens* v. *Boom Company,* 58 W. Va. 11, 50 S. E. 872; *Guyandot Valley R'y. Co.* v. *Buskirk,* 57 W. Va. 417, 50 S. E. 521, 110 Am. St. Rep. 785; Annotation, *Kennedy* v. *Treleaven,* 103 Kan. 651, 175 P. 977, 7 A.L.R. 274. We are not concerned in the instant case with the measure of recovery where damages done to property are of a temporary nature. See *Jones* v. *Pennsylvania R. R.,* 138 W. Va. 191, 75 S. E. 2d 103; *Oresta* v. *Romano Bros.,* 137 W. Va. 633, 73 S. E. 2d 622.

The question as to whether a plaintiff is entitled to recover, in addition to the amount of damage actually done, a sum sufficient to enable him to repair or rebuild in a manner required by such an ordinance, has been raised in several jurisdictions. In *Zindell* v. *Central Mutual Insurance Company of Chicago,* 222 Wis. 575, 269 N. W. 327, 107 A. L. R. 1116, plaintiff sought compensation for damages resulting to a garage through negligence of defendant. Plaintiff offered evidence to establish the "diminished value" by proving the value of the garage

building as it was immediately before and immediately after the damage. Objections interposed by defendant were sustained and the trial court ruled that " 'the rule of damages in this case is the cost of restoring the building to the condition it was before the accident, either by repairing, if that is allowed, and then if not by rebuilding under the code.' As the result of sustaining the appellants' objections, the plaintiffs were prevented from introducing proof to establish the diminished value of the building, in accordance with the rule" in *Hickman* v. *Wellauer,* 163 Wis. 160, 157 N. W. 767, and *Bunker* v. *City of Hudson,* 122 Wis. 43, 99 N. W. 448. After pointing out that the appellants had invited the error which prevented the introduction of evidence as to the diminished value of the building, the appellate court stated the rule as to the measure of damages in this language: "Consequently, the owner of a damaged building is ordinarily entitled to recover the entire cost of restoring its former condition so that it can be used again for the same purposes, provided that, if that cost exceeds the diminution in the value of the building as the result of the injury, then the recovery must be limited to the amount of such diminution." The Court permitted recovery of the amount necessary to rebuild in accordance with the requirements of the ordinance, but only for the reason that defendant was estopped to contend otherwise because of its invited error.

In *Callender, McAuslan & Troup Co.* v. *Baccala,* 71 R. I. 103, 42 A. 2d 511, plaintiff sued for damages done to its coal vault, which was directly under a sidewalk of the City of Providence, when defendant negligently backed his truck onto the sidewalk. The repair to the sidewalk could have been made for approximately five hundred dollars, but the city refused to issue a permit for the repair unless the entire roof over the coal vault was rebuilt, the cost of which would amount to approximately two thousand dollars. Plaintiff contended that it was entitled to recover the entire cost necessitated by the action of the city. The Court held, however, that the city "required plaintiff to rebuild the entire sidewalk [roof over the coal

vault] because of its general unsafe condition, without reference to the section which was damaged by defendant's negligence. In such circumstances, * * * defendant's negligence was not the proximate cause of the additional expense to which the plaintiff was put in rebuilding the entire sidewalk. It was not a substantial factor in producing such enhanced damages to the plaintiff."

In *Jesel* v. *Benas*, 177 Mo. App. 708, 160 S. W. 528, the building damaged was constructed of brick walls nine inches thick. An ordinance of the City of St. Louis required that reconstructed walls be thirteen inches thick. The proof showed, however, "that it did not cost any more for the thirteen-inch than the nine-inch brick because to lay the nine-inch would cost more than for laying the thirteen-inch brick". In this circumstance it was held that there was no error in the admission of the evidence relating to the building of the thirteen-inch walls. See *Ecuyer* v. *Benevolent Association of Elks*, 152 La. 73, 92 So. 739; *Burr* v. *Clark*, 30 Wash. 2d 149, 190 P. 2d 769; *Rutherford* v. *Royal Insurance Company*, 12 F. 2d 880, 49 A. L. R. 814. In the A. L. R. annotation to the case last cited, a number of cases are correlated which consider a somewhat pertinent question, the liability of an insurer who has agreed to repair or replace a building, where the cost of such repair or replacement is enhanced by provisions of an ordinance.

As above pointed out, the holdings of this Court, as indeed of a very great majority of courts, are to the effect that a plaintiff in such a case as the instant one is entitled to recover only that amount which will compensate him for the damages actually suffered. He is not entitled to a greater amount or to a more valuable building. This appears to be clearly indicated by the holdings which permit a plaintiff to prove replacement costs but require proper allowances against such costs for depreciation or deterioration. The proof as to replacement costs and proof of proper allowances for depreciation or deterioration are admitted only for the purpose of establishing the true extent of the damage, not for the purpose of allowing a

plaintiff to recover the value of a new building. To permit recovery by a plaintiff of the amount of the cost of replacement necessitated by such an ordinance, over and above the actual damages suffered by him, would, we think, unduly and unjustifiably enrich the plaintiff and would require defendant to pay a sum greater than that resulting proximately from his negligence. The plaintiff would often succeed in obtaining a new building of much greater value than the one destroyed, or a sum greater than that value for a building he may never erect. On the other hand, to permit the requirement of such an ordinance to control the measure of damages recoverable by a plaintiff would, in some circumstances, probably deny a plaintiff sufficient recovery. To illustrate, we may suppose a building constructed of expensive materials only because of the requirement of an ordinance; repeal of the ordinance because of a change in the nature of the business within the area wherein the building is situated; and the negligent destruction of the building. Could it be contended that a plaintiff, in such circumstances, would be entitled to recover only the amount of costs of the construction of a building less substantial, of cheaper materials, and not the amount of the actual damages? We are of the opinion, therefore, that the admission of the ordinances, in the circumstances of the instant case, for the purpose of establishing the amount of damages recoverable, constituted prejudicial error. We are of the further opinion, however, that no precise rule as to the admission of such an ordinance can be laid down. Circumstances of a particular case may require the admission of the ordinance and proof of the difference in value of the repaired or rebuilt property and that of the property damaged or destroyed, in order to establish the market value of the particular property immediately before and after the injury. See *Zindell* v. *Central Mutual Insurance Company of Chicago, supra; Burr* v. *Clark, supra.*

Another contention of defendant relates to the proof of plaintiffs as to the damages suffered by them in the destruction of or damage to the personal property. The con-

tention here is that plaintiffs failed to offer substantial evidence as to the value of the personal property damaged or destroyed at the time of the explosion. We think there is no merit in this contention. The personal property consisted of furniture and fixtures within the dwelling at the time of the explosion. Each of the plaintiffs qualified for the purpose of giving opinions, and gave opinions, as to the market value of the personal property destroyed, item by item, and as to the market value of the personal property damaged, also item by item, both immediately before and immediately after the explosion. While their experience and knowledge as to such values were very limited, we think them sufficient to support a finding. See *Cochran v. Craig*, 88 W. Va. 281, 106 S. E. 633; 7 M. J., Evidence, Section 192.

Another contention of defendant is that the trial court erred in admitting proof relating to the piece of pipe removed from defendant's gas line under Fayette Street sometime subsequent to the explosion, which pipe contained rust holes to its interior. Defendant contends that the admission of this evidence constituted prejudicial error, in that it informed the jury that defendant had repaired or replaced its line after the explosion, which would amount to an admission, in the minds of the jurors, of negligence on the part of defendant. In *Agsten & Sons, Inc. v. United Fuel Gas Company, supra,* this Court held: "2. Evidence·that after an explosion of natural gas the utility replaced a service line of black steel pipe with a service line of galvanized pipe is not admissible as tending to establish the negligence of the utility in the installation of the service line." In the instant case, the trial court was careful to admit this evidence only for the purpose of establishing the leakage condition of the gas line of defendant. As that was one of the proper elements of proof of negligence, we think it was clearly admissible. See *Redman v. Community Hotel Corp.*, 138 W. Va. 456, 76 S. E. 2d 759; *Groff v. Charleston-Dunbar Natural Gas Company,* 110 W. Va. 54, 156 S. E. 881. It may be true, since the leakage condition of the pipe was not connected by evidence

with the cause of the explosion, that the evidence should have been stricken, had timely motion been made therefor.

The only other contention of defendant which we need consider relates to the giving to the jury of plaintiffs' instruction No. 2, which reads: "The Court instructs the jury that if you believe, by a preponderance of the evidence, that defendant's pipes, mains, connections, machinery or other appliances used in and under Fayette Street, for the transmission or flow of natural gas, were negligently and carelessly maintained by the defendant, Hope Natural Gas Company, in a dangerous and defective condition on and before January 27, 1952; and that defendant had notice of that condition, or by the exercise of reasonable care should have known of said condition; and that as the proximate result of the negligence or carelessness of the defendant, Hope Natural Gas Company, an explosion and fire occurred in plaintiffs' property, which proximately resulted in damage to plaintiffs' property, you should find for plaintiffs, unless you should find that the plaintiffs were guilty of negligence on their part which proximately contributed to the said explosion and fire, in which event you should find for the defendant." One of the grounds of objection to the instruction was: "Because the Instruction does not show any causal connection between the gas from the defendant's gas lines and the explosion." We find no error as to the contents or wording of the instruction, but because of what has been said as to the insufficiency of the evidence to establish negligence on the part of defendant, and any causal connection between that alleged negligence and the explosion, the instruction should not have been given. Defendant's peremptory instruction should have been given.

For the reasons indicated, the judgment complained of will be reversed, the verdict of the jury set aside, and a new trial awarded.

*Judgment reversed;*
*verdict set aside;*
*new trail awarded.*